Argued March 14, decided April 23, rehearing denied May 21, 1912.

## FRIENDLY v. OLCOTT.

[123 Pac. 53.]

STATUTES—REFERENDUM ELECTIONS—INJUNCTION.

1. Section 3474, L. O. L., provides that, if the Secretary of State
shall refuse to file any petition for referendum, any citizen may apply
within 10 days after such refusal for a writ of mandamus to compel
him to do so, and that, if it be decided that the petition is sufficient,
the Secretary shall then file it, and in the following sentence provides
that, "on a showing that any petition is not legally sufficient, the court
may enjoin the Secretary of State and all other officers from certifying
or printing on the official ballot for the ensuing election the ballot
title and numbers of such measure."   Section 3475, provides that,

when a referendum petition is filed, the Secretary of State shall at once forward a copy to the Attorney General, who shall within 10 days prepare and return to him a title for the measure to be printed on the election ballot, and within 10 days thereafter any one dissatisfied with the Attorney General's action may appeal to the circuit court for a change in the ballot title. *Held,* that the 10-day limitation in Section 3474 did not apply to a suit to enjoin the Secretary of State from certifying the ballot title to be printed on the ballot; there being a distinction between mandamus and injunction.

STATUTES—INJUNCTION—PERSONS ENTITLED TO SUE.
2. The remedy by injunction provided for in Section 3474 can only be invoked by the State through its proper officers, and a private citizen cannot sue to enjoin the Secretary of State from certifying the ballot title formulated by the Attorney General to be printed on the ballot for referring a legislative bill.

WORDS AND PHRASES—"CIVIL RIGHTS."
3. "Civil rights" are such as belong to any citizen, or, in a wider sense, to every inhabitant of the country, and are not connected with the organization or administration of governement, and include the rights of property, marriage, jury trial, etc.

WORDS AND PHRASES—"POLITICAL RIGHT."
4. "Political rights" consists in the power to participate directly or indirectly in the establishment or administration of government such as the right of citizenship, suffrage, etc.

PLEADING—DEMURRER—WAIVER.
5. A general demurrer to the complaint was not waived by answering over.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by S. H. Friendly to enjoin the Secretary of State from certifying to the county clerks the ballot title formulated by the Attorney General to be printed on the ballot for the general election to be held in November, 1912, whereby the electors may vote on the referendum of House Bill No. 210 passed at the twenty-sixth regular session of the legislative assembly. The plaintiff alleges "that for more than twenty years last past the plaintiff has been, and is now, a resident, inhabitant, and taxpayer in the city of Eugene, Lane County, Oregon, and during all of said time has been

and is now a citizen of the United States of the State . of Oregon and a legal voter therein." The complaint recites the regular passage by the legislative assembly of the measure in question appropriating the sum of $328,258.92 for the purpose of constructing additional buildings, etc., for the University of Oregon and the adjournment of that body on February 18, 1911. It is further substantially stated that within 90 days after the adjournment of the legislative assembly H. J. Parkinson and W. H. Abrams tendered to the defendant, as Secretary of State, a pretended petition consisting of 117 sections, and purporting to contain signature thereto of citizens and legal voters of the State of Oregon to the number of 13,715, affecting to demand that House Bill No. 210 be referred to the people of the State of Oregon for their approval or rejection at the regular election to be held in November, 1912, and that the defendant as Secretary of State accepted the petition and filed it as of May 18, 1911. It is averred, in effect, that, as soon as the petition was filed, the defendant transmitted a copy of the measure in question to the Attorney General, who prepared a ballot title for the same to be put on the ballot at the election mentioned, and that the defendant accepted and received the ballot title and intends to and will, if not enjoined by this suit, furnish to each of the county clerks of the State of Oregon a certified copy thereof to be placed on the ballot to be used at the election. The plaintiff avers and the defendant admits that the signatures of 6,135 legal voters are required upon a petition to affect a referendum of the act in question, but the plaintiff alleges that in truth and in fact the petition does not contain more than 2,000 genuine signatures, and the bill goes on to specify sundry objections to the petition not only affecting its form, but also charging that

many of the signatures are fraudulent and forged in such numbers as would reduce the valid signatures below the requisite number of 6,135. The substance of the prayer is that the defendant be enjoined from certifying the ballot title to the county clerks, and from doing anything to cause it to be put on the ballot.

The defendant's demurrer on the ground, first, that plaintiff has not legal capacity to bring the suit, and that the complaint does not state facts sufficient to constitute a cause of suit against the defendant, was overruled by the circuit court. The answer traversed the allegations of the complaint in material particulars, especially in the portion charging the appending of forged and fraudulent names to the petition. After a hearing the circuit court made a decree according to the prayer of the complaint, and defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Isaac H. Van Winkle,* Assistant Attorney General, *Mr. Charles E. S. Wood* and *Mr. W. S. U'Ren,* with oral arguments by *Mr. Crawford, Mr. Wood* and *Mr. U'Ren.*

For respondent there was a brief over the names of *Mr. Woodson T. Slater, Mr. Myron E. Pogue* and *Mr. Martin L. Pipes,* with an oral argument by *Mr. Slater.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. In Section 3474, L. O. L., the following language appears:

"If the Secretary of State shall refuse to accept and file any petition for the initiative or for the referendum, any citizen may apply within ten days after such refusal to the circuit court for a writ of mandamus to compel him to do so. If it shall be decided by the court that such petition is legally sufficient, the Secretary of State shall then file it, with a certified copy of the judg-

ment attached thereto as of the date on which it was originally offered for filing in his office. On a showing that any petition is not legally sufficient, the court may enjoin the Secretary of State and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure."

The appellant argued, in substance, that but one form of judicial procedure was contemplated by Section 3474, L. O. L., it being by writ of mandamus for which application must be made within 10 days after the Secretary of State refuses to file a petition for an initiative measure or for a referendum. In other words, the defendant's theory as to the form of litigation is that in such an action the court will either compel the officer to file the petition, or will enjoin him from certifying the ballot title for uses in the election. This contention is erroneous. The distinction between legal and equitable procedure is still observed in this State. Mandamus is an extraordinary legal remedy, and in the matter under consideration can operate only to compel the filing of a petition which the Secretary refuses to file. But we have here a case where the officer had filed the petition and was continuing on the subsequent course of referring the measure to the people as provided by the act of February 25, 1907, of which Section 3474, L. O. L., is a part. If any one entitled to do so would oppose this action of the Secretary, the remedy is by injunction which is cognizable only in equity. The statute plainly says that the Secretary's certification of the ballot title may be enjoined under certain specified conditions. The limit of 10 days is not one of those conditions nominated in the statute. This is apparent from a consideration of all of its terms. When a petition is filed, the Secretary at once forwards a copy of the measure in question to the Attorney General. Within 10 days that officer

prepares and returns to the Secretary a title for the measure to be printed on the election ballot. Within a succeeding period of 10 days any one dissatisfied with the action of the Attorney General may appeal to the circuit court for a change in the ballot title. Section 3475, L. O. L. Not until the decision of the court on that issue is had is the title ready for certification to the various county clerks nor until then would the necessity arise for enjoining the Secretary from certifying it to those officers. For the reason that all these things cannot be done in that time, it is apparent that the limitation of 10 days laid down for mandamus proceedings does not apply to the equitable remedy of injunction which itself is prescribed for an entirely different purpose.

2. The most important question arises under the general demurrer. Does the plaintiff by his bill state facts sufficient to support his prayer for relief? If this were the action in the name of the State on the relation of the plaintiff here for a writ of mandamus to compel the exercise of a ministerial function on the part of the Secretary of State, the case of *State ex rel.* v. *Ware,* 13 Or. 380 (10 Pac. 885), is a sustaining precedent. That was a proceeding by mandamus to compel the county clerk to include in the notices of election the office of circuit judge as one of those to be filled at the election designated. The court held, in substance, that the question was one of public right, and, the object of the mandamus being to procure the enforcement of a public duty, the State is the real party in interest as plaintiff, and hence the relator need not show that he has any special interest in the result, it being sufficient that, as a citizen and voter of the county, he has a general interest in the execution of the laws. The same doctrine is announced in *State ex rel.* v. *Grace,* 20 Or. 154 (25 Pac. 382).

But mandamus is promotive in its purpose, while injunction is obstructive. The former affirmatively compels the officer to perform his duty to the public in the execution of the laws. The latter prevents him from carrying into effect his construction of the statutes. In *State ex rel.* v. *Lord,* 28 Or. 498 (43 Pac. 471: 31 L. R. A. 473), the distinction between the scope and object of an action in mandamus and a suit for injunction is clearly pointed out. The development of the law on the subject from the earliest times to the present is traced out exhaustively by Mr. Justice WOLVERTON. Premising that injunction against a public officer is the exercise of sovereignty vested only in the State, he says: "Moreover, it is not fit that these great powers pertaining to sovereignty, which affect the whole people alike and none less nor more than the rest, should be invoked by individual citizens or by a class or classes or body corporate or an aggregation thereof less than the whole State. State officers should not be subjected to the annoyance of a suit at the instance of every individual, when civil or property rights are not invaded, who might conceive that the laws were being improperly administered or that public funds were not being applied to legitimate public purposes. State government being divided into three co-ordinate branches, executive, legislative, and judicial, it is most essential to the preservation of the autonomy of government that there be no enchroachment of one branch upon another. * * The judiciary acts not upon its own motion, but only when some suitor duly authorized by law presents in due form a cause appropriate for its cognizance. Its machinery may be set in motion by private suitors in some form or other in all cases where civil or property rights are being invaded or intrenched upon to their injury or damage, be the suitor ever so humble or the injury encountered ever so small;

but it in all cases of purely public concern affecting the welfare of the whole people of the State at large, the court's action can only be invoked by such executive officers of the State as are by law intrusted with the discharge of such duties." Again, in *State ex rel.* v. *Metschan,* 32 Or. 372, 384 (46 Pac. 791: 53 Pac. 1071: 41 L. R. A. 692), Mr. Justice BEAN wrote: "Indeed, the right of the State through its proper officers to maintain such a proceeding would seem to be one of the necessary incidents of sovereignty. Without it the rights of the citizen cannot be protected or enforced in cases where he is unable to act for himself. In a suit by an individual he is required to show some special injury to himself, and when, as in this case, the wrong complained of is public in its character, affecting no one citizen more than another, it is impossible for him to do so and for that reason he is without remedy, although he may be injured in common with other members of the community. In such cases the State has a right by virtue of its high prerogative powers to call upon the court, through its proper law officer, to protect the rights of its people."

What, then, in the light of these precedents, is the construction to be placed on the statute authorizing litigation in connection with the initiative and referendum? Section 3474, L. O. L., without resting the matter upon his private interest or the invasion of his individual rights as a condition, expressly authorizes any citizen to apply for a writ of mandamus to compel the filing of a petition. This is no more nor less than could already have been accomplished under authority of *State ex rel.* v. *Ware,* 13 Or. 380 (10 Pac. 885) and *State ex rel.* v. *Grace,* 20 Or. 154 (25 Pac. 382). In that respect the statute of February 25, 1907, establishes no new principle, but in good reason is declaratory of what was already the law so far as the right to be

enforced is concerned.  When, however, that enactment comes to the subject of injunction, it is silent as to the party plaintiff.  It says:

"On a showing that any petition filed is not legally sufficient, the court may enjoin the Secretary of State and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measures."

It is clear that, as the statute conferred no new right on the individual as to mandamus, in like manner it has not increased his privilege as regards injunction.  In both instances the law remains as it was before the statute was enacted in respect to who may be parties litigant.

3, 4. Here the plaintiff would invoke equitable cognizance of a purely political question which, as pointed out in the similar case of *State ex rel.* v. *Dunbar*, 48 Or. 109 (85 Pac. 337), is not within the scope of chancery jurisdiction.

"Civil rights are such as belong to every citizen of the state or country, or in a wider sense to all its inhabitants and are not connected with the organization or administration of government.  They include the rights of property, marriage. protection by the laws, freedom of contracts, trial by jury, etc. * * Political rights consist in the power to participate directly or indirectly in the establishment or administration of government such as the right of citizenship, that of suffrage, the right to hold public office and the right of petition."  Black's Law Dictionary (2 ed.) 1039.

Bouvier thus defines and illustrates the two rights:

"Political rights consist in the power to participate directly or indirectly in the establishment or management of the government.  These political rights are fixed by the constitution.  Every citizen has the right of voting for public officers and of being elected.  These are the political rights which the humblest citizen possesses. Civil rights are those which have no relation to the

establishment or management of the government. They consist in the power of acquiring and enjoying property or exercising the paternal or marital power and the like. It will be observed that every one, unless deprived of them by sentence of civil death, is in the enjoyment of the civil right which is not the case with political rights for an alien, for example, has no political, although in full enjoyment of the civil rights." 2 Bouvier, Law Dictionary, 597.

True enough, the case of the *State ex rel.* v. *Dunbar* was decided before the enactment of February 25, 1907, yet, although that statute has provided that the Secretary may be enjoined, it has not said at whose suit he may be enjoined. The principles announced in *State ex rel.* v. *Lord,* 28 Or. 498 (43 Pac. 471: 31 L. R. A. 473), and *State ex rel.* v. *Metschan,* 32 Or. 372, 384 (46 Pac. 791: 53 Pac. 1071: 41 L. R. A. 692), are the same now as before the statute, as they affect the parties who may call into action the equity powers of the court. The statute will not be construed to expand the original chancery jurisdiction of the courts beyond the express terms of the enactment, especially where it will involve the interference by the judiciary with a co-ordinate branch of the government.

The plaintiff does not show that he will be injured in any property or civil right by the contemplated action of the Secretary of State in certifying the ballot title to the county clerks. Neither will his political right to vote on the measure at the election be infringed. He can then, as always, exercise his electoral franchise unaffected by anything shown in his bill. If he can enjoin the Secretary of State now, he can sue out a writ the day before that officer would certify the ballot title, and thus balk the whole people in the exercise of their contitutional reserve power to reject at the polls any law passed by the legislative assembly. The principle is sound and

well settled that as against public officers, where their action involves purely public or political rights, the drastic remedy of injunction can be invoked only by the State acting through its proper law officer. In some instances a suit may be maintained in the name of the State on the relation of a citizen who can show some special injury to his civil or property rights but this case is not in that category. To sustain plaintiff's suit when he shows no injury to his private rights would be a pronounced example of government by injunction.

This conclusion renders unnecessary the consideration of the other questions raised at the argument.

5. The general demurrer was not waived by answering over. *Parrish* v. *Parrish,* 52 Or. 160 (96 Pac. 1066). It should have been sustained as it raised a vital issue at the very threshold of this litigation.

The decree of the cricuit court is therefore reversed, and one here entered dismissing the suit.

                Reversed: Suit Dismissed.