Argued July 17, decided July 22, 1913.

# LIBBY *v.* OLCOTT.

### (134 Pac. 13.)

**Constitutional Law—Nature of "State Constitution"—Grant or Restriction.**

1. The "state Constitution" is a restriction on the legislative powers, and not a grant of power, so that the legislature may enact any law, unless forbidden by the Constitution.

**Constitutional Law—Constitutionality.**

2. The courts will not declare a statute invalid, unless its conflict with the Constitution is plain.

**Pleading—Construction—Construction Against Pleader.**

3. Pleadings will be construed against the pleader, and facts not alleged will be presumed not to exist.

**Statutes—Statutory Regulations—Referendum Elections.**

4. Act of February 28, 1913 (Laws 1913, p. 620), requiring a special election to be held in the state on the first Tuesday after the first Monday in November, and providing that all measures passed by the twenty-seventh legislative assembly upon which the referendum may be invoked shall be submitted for the people's approval at such election, sufficiently states the measures upon which a vote is to be taken at the election; it being competent for the legislature to provide that the referendum shall be only on its own measures.

**Statutes—Validity.**

5. The legislature may anticipate a probable future condition, and provide legal rules to apply thereto.

**Statutes—Statutory Regulations—Referendum Elections—Validity of Statute.**

6. Act of February 28, 1913 (Laws 1913, p. 620), requiring a special state election to be held in November, 1913, at which shall be submitted for the people's approval all measures passed by the twenty-seventh legislative assembly upon which the referendum may be invoked, does not violate Article IV, Section 1, of the Constitution, reserving to the people the power to approve or reject at the polls any act, upon a referendum petition filed not more than 90 days after the adjournment of the legislature, providing that the veto power of the Governor shall not extend to such measures, and that referendum elections shall be had at the biennial regular elections, unless a special election be ordered.

**Constitutional Law—Ex Post Facto Laws—Delegation of Legislative Power.**

7. Act of February 28, 1913 (Laws 1913, p. 620), requiring a special election to be held in the state in November, 1913, at which shall be

submitted for the people's approval all measures passed by the twenty-seventh legislative assembly upon which the referendum may be invoked, does not violate Article I, Section 21, of the Constitution, prohibiting *ex post facto* laws, or laws the taking effect of which is made to depend upon any authority except as provided therein.

**Statutes—Construction.**

8. The statute is prospective in its operation.

**Statutes—Statutory Regulations—Ordering Referendum Elections.**

9. Act of February 28, 1913 (Laws 1913, p. 620), ordering a special referendum election in November, 1913, at which all measures passed by the twenty-seventh legislative assembly, upon which the referendum may be invoked, shall be submitted, and carrying a $12,000 appropriation, is not unconstitutional for not providing adequate funds for holding it, Section 3322, L. O. L., requiring counties to provide compensation for election officers, Section 3392 providing for printing and distributing bills, and Article IV, Section 1, of the Constitution, requiring the Secretary of State, in submitting referendum petitions, to be guided by the general laws until special legislation be enacted.

**Constitutional Law—Departments of Government—Judicial Functions.**

10. The courts can only declare what the law is, and determine whether a statute is constitutional, and cannot declare a law invalid because of the expense to the taxpayers thereby imposed.

From Marion: WILLIAM GALLOWAY, Judge.

In Bank.   Statement by MR. JUSTICE BURNETT.

This is a suit by A. C. Libby against Ben W. Olcott, Secretary of State of the State of Oregon, the facts being as follows:

By the act of February 28, 1913 (Laws 1913, p. 620), the legislative assembly passed a law providing that "there shall be held a special election in the several voting precincts of this state on the first Tuesday after the first Monday in November, 1913. All measures passed by the twenty-seventh legislative assembly of the State of Oregon upon which the referendum may be invoked shall be submitted to the people for their approval or rejection at such special election." In substance, the act in general terms made the present law for general elections applicable to that election,

provided for filing arguments for or against the laws referred, printing the official pamphlet relating thereto, and mailing the same, together with an appropriation for $12,000 to carry the act into effect, and declared an emergency. In his complaint the plaintiff recites that at the same session the legislative assembly passed what is known as the "Industrial Accident Commission Law" on February 25, 1913, and an act to protect the public peace against habitual criminals, etc., on February 18, 1913, and that within the time provided by law there were filed with the Secretary of State petitions calling for a referendum of those acts and others. He charges that the defendant, as such officer, intends to proceed as usual in referendum matters under the authority of the act first mentioned. He urges that it is unconstitutional in various particulars hereinafter more fully noticed. He describes himself as a citizen, legal voter, and taxpayer within the State of Oregon. He says that by reason of the expenditures necessarily involved in the conduct of the special election, his burden of taxation will be increased, the income from his property diminished, and he will be damaged by the loss of the increased tax money. The Circuit Court overruled a demurrer to the complaint, and, the defendant having declined to plead further, entered a final decree, enjoining the defendant as Secretary of State from proceeding under the statute in question. The defendant has appealed.

                                        REVERSED.

For appellant there was a brief and an oral argument by *Mr. Andrew M. Crawford,* Attorney General.

For respondent there was a brief, with oral arguments by *Mr. Harry Yanckwich* and *Mr. H. J. Parkinson.*

As *amici curiae* there was a brief, with oral arguments by *Mr. W. S. U'Ren* and *Mr. James B. Kerr.*

MR. JUSTICE BURNETT delivered the opinion of the court.

At the outset it may be observed that, although the plaintiff designates himself as a citizen and taxpayer of the state, and avers that his taxes will be increased by the expenditure of public money in connection with the special election in question, yet he does not state anything to show that he will be injured in any manner different from any other citizen and taxpayer. Following the doctrine of *Friendly* v. *Olcott,* 61 Or. 580 (123 Pac. 53), and cases there cited, the suit of the plaintiff might well be dismissed, without further consideration, on the ground that the courts will not interfere with the political action of a co-ordinate branch of the government by the drastic remedy of injunction, at the suit of any individual who cannot show special injury to himself, not attaching to others, and attending the conduct which he would enjoin.

1. Passing this question, however, we will consider the complaint as affected by the questions presented at the argument. Both parties concede, and it is well settled, that the state Constitution is a restriction on the legislative assembly, and not a grant of power. *E converso,* so far as the Constitution is concerned, that law-making body can enact any statute, unless prevented by the fundamental law: *Straw* v. *Harris,* 54 Or. 424 (103 Pac. 777).

2. It is also a legal aphorism controlling the judicial branch of the government that it will not declare invalid the enactments of the legislative department, unless their incompatibility with the organic law is plainly manifest: *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263, 13 L. R. A. 533); *Deane* v. *Willamette*

*Bridge Co.,* 22 Or. 167 (29 Pac. 440, 15 L. R. A. 614);
*State* v. *Shaw,* 22 Or. 287 (29 Pac, 1028). With these
canons of construction in mind we address ourselves to
the disposition of the objections urged by the plaintiff
against the constitutionality of the act under which the
defendant is about to proceed.

3–5. The plaintiff's first reason for his opposition
is that the election is ordered without stating upon
what measures the vote will be taken, and because
no petitions for the reference of laws to the people
were pending at the passage of the act. To the first
reason the second is closely allied. It is that the
electorate is to be called upon to approve or reject
only laws passed at the 1913 session of the legis-
lative assembly. He argues that before the refer-
endum can be directed, there must be some valid
enactment in being that may be the subject of that
prerogative of the people. It may be noted that both
of the acts specifically mentioned in the complaint,
and against which referendum petitions are alleged to
have been filed, were passed before the law assailed
in this suit. Immediately upon their enactment they
became proper subjects for the exercise of the referen-
dum, subject to the condition that the petition against
them be filed with the Secretary of State not later than
90 days after the final adjournment of the legislature
adopting the measure. We are not informed by the
complaint that any other measure attacked by the
referendum was not passed prior to the act in ques-
tion. Construing the pleading against the pleader, we
presume there is none. It is plain, therefore, that
there was then in existence material upon which the
referendum might operate. The act clearly desig-
nates them, not as laws thereafter to be passed, but
in the words "all measures passed by the twenty-
seventh legislative assembly of the State of Oregon

upon which the referendum may be invoked." It also may be remarked that the legislature itself, acting directly, could have referred to the people any or all the laws it enacted, and it is not perceived why it could not, with equal propriety, annex a lawful condition to a referendum of the same bills ordered by petition. Summing up, then, as to the first two objections, we hold that the act sufficiently states the measures upon which a vote will be so taken, that there was then actual material in existence subject to the referendum, and that it was competent for the legislature to provide for the referendum of its own measures only. It is also competent for the legislature to anticipate a condition likely to arise in the future, and consequently to provide legal rules applicable to such a contingency. This constantly happens in the ordinary course of legislation. Unless, therefore, it is forbidden by the Constitution, the legislative assembly, foreseeing possible referendums, might with propriety provide a rule of action in advance, controlling the procedure in such a situation.

6. According to the complaint, the head and front of the legislature's offending is that it has called a special election for the decision of possible referendums. The essence of the controversy rests in the right or wrong of that action as determined by the standards of the Constitution. This properly brings us to a consideration of the plaintiff's third and principal objection. It is, in substance, that the act diminishes and attempts to pervert and destroy the referendum power reserved to the people. Article IV, Section 1, of the Constitution declares in part as follows: "The legislative authority of the state shall be vested in a legislative assembly, consisting of a Senate and House of Representatives, but the people reserve to themselves power to propose laws and amendments to the

66 Or.—9

Constitution and to enact or reject the same at the polls, independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. * * The second power is the referendum, and it may be ordered, * * either by the petition signed by 5 per cent of the legal voters, or by the legislative assembly, as other bills are enacted. Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures referred to the people. All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. * * '' In this section the people have declared their will on the subject in hand. By it they have vested legislative authority primarily in the legislative assembly with the reservations noted. Given a referendum ordered by the petition of voters, or by an act of the legislature passed as other bills are enacted, the people saw fit to make a declaration about when such a question should be decided. On this point they said that ''all elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election.'' This language must be construed as part of the general scheme outlined in that section of the Constitution. It qualifies the reservation of power by the people which they call the referendum. To the legislative assembly they have committed the authority to call special referendum elections. Whether it fetters or facilitates the exercise of that reserved prerogative does not concern us. It exists. It is the

voice of the people themselves which we must heed, and to which we must give effect. What is the essence of the referendum? It is the right to approve or reject at the polls any act of the legislative assembly. The people themselves have shortened the period within which its exercise may be invoked to 90 days after the final adjournment of the session of the legislature at which the contested measure was enacted. The law in question does not purport to disturb this element of the people's power. Neither does it in the least essay to abridge the right of any legal voter to approve or reject any measure referred. The right to appoint a special election might properly be ascribed to the legislative authority vested primarily by the people in the legislative assembly; but the people have gone further, and in almost express terms have given their representatives permission to call such elections.

Considerable was said at the hearing about the clause saying that "the veto power of the Governor shall not extend to measures referred to the people." If the legislature would avoid the Scylla of a veto, it may steer its measures toward the Charybdis of the referendum, or it could happen that within the time the executive is entitled to hold an act for his consideration, the requisite 5 per cent of the legal voters by proper petition might invoke the referendum and oust the veto power as to any measure. These, however, are academic questions that do not affect the present juncture.

7, 8. The fourth objection is, in substance, that the act is unconstitutional in that the election is made to depend upon the contingency of a referendum being invoked as to any act of the twenty-seventh legislative assembly. The section of the Constitution upon which the plaintiff rests this objection in part reads thus: "No *ex post facto* law, or law impairing the obliga-

tions of contracts, shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution * * '': Article I, Section 21 of the Constitution. Neither this law, nor its taking effect, is made to depend in this instance upon anything except constitutional authority. The election itself mentioned may depend upon a contingency, but the election is not the law. The statute authorizing it went into effect like any other enactment. It is prospective in its operation and, as in many other cases, as the situation existed at the date of its enactment, there was no immediate use for it, yet it was a law of the state then as much as ever. It is the enactment and not the mere use of the law which gives it sanction. For illustration: The act of February 8, 1909 (Laws 1909, p. 65), required that all beds in hotels and lodging-houses should be provided with sheets not less than nine feet in length, without mention of width, thickness or cleanliness. It has not come to our knowledge that a case has arisen to which that measure could be applied, yet it took effect the same as any other law. It would be quite as logical as the contention of the plaintiff on this point, if we should say that the taking effect of our several penal laws depends upon the commission of a crime by some individual. All the legislature has done in this connection has been to provide in advance a rule of action to be observed in case certain conditions arise, and it was well within its prerogative when it did so.

9. Lastly, the plaintiff contends that the act is unconstitutional and void because it does not provide ways and means to carry out the special election, specifying that the appropriation of $12,000 is not adequate, and that the election will cost about $100,000. He likewise points out that the legislative assembly did not

appropriate money to pay the judges and clerks and
other expenses of election, and did not authorize the
county courts, county clerks and Secretary of State
to perform their usual duties pertaining to such cases,
all in details too numerous to mention here. As
amended by the act of February 27, 1913 (Laws 1913,
p. 556), Section 3311, L. O. L., provides that "all gen-
eral, special, and presidential elections held in this
state shall be conducted under the provisions of this
act," referring to the act of February 13, 1891, com-
monly known as the "Australian Ballot Law," as
amended by subsequent legislation. Under the sanc-
tion of those enactments all the referendum elections
thus far have been conducted. It would do violence to
the rule of contemporaneous construction if we should,
at this late day, decide that in every case where the
legislature directs a referendum, it should also devise
a plan for holding that particular election complete in
all details, yet that is the conclusion to which the argu-
ments and objections of the plaintiff logically lead us.
It would be quite as consistent to say that whenever
the law-making power defines a new crime and pre-
scribes a penalty, it must also establish a grand jury,
ordain forms of indictment and procedure for the
designated offense. The common-sense view is that
when the legislature calls a special election, all the pro-
cedure already established for that purpose is thereby
called into operation.

Section 3322, L. O. L., provides for payment by the
counties of the compensation of election officers and
other expenses incurred in carrying out the provisions
of the election laws, and section 3392 provides for
printing and distribution of bills. It was decided, in
substance, in *Flagg* v. *Marion County,* 31 Or. 18, 21
(48 Pac. 693), that a requirement of statute to do a
public act necessarily implies power to incur the proper

expense of performance. The provisions of the election laws now in force meet all the objections urged by plaintiff in this connection. And, finally, on this point, Article IV, Section 1, of the Constitution concludes with this language: "Petition and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people he, and all other officers, shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor."

10. The argument about the expense to taxpayers is political, and would be very properly addressed to the legislature, or to those who might be inclined to become petitioners to invoke the referendum. We have none of the functions or prerogatives of either of them. We can only declare what the law is, and decide whether a statute does or does not harmonize with the Constitution. Government by election may become as unsatisfactory as government by injunction. It is almost certain to be more expensive, but the courts cannot prevent it. The people by their Constitution have put it into the power of 5 per cent of the legal voters to bring about such expenditures, and the people must bear the burden until they change the law. The people chose their representatives under the direct primary law, and their subsequent action at the general election. Through their agents, thus winnowed from the mass of population, the people have spoken in the statute under consideration. It does not violate the restrictions of the people's Constitution. Their mandate as thus expressed must be obeyed by the defendant and all others.

The decree of the Circuit Court is reversed, and the suit is dismissed.

Reversed: Suit Dismissed.