Argued October 19; affirmed October 28, 1948

# PORTLAND GENERAL ELECTRIC CO., a Corp., and JOSEPH H. RANDALL *v.* JUDD, County Clerk et al.

### 198 P. (2d) 605

*John J. Coughlin,* of Portland, argued the cause for appellants. With him on the brief were Griffith, Peck, Phillips & Nelson, of Portland.

*Chris J. Kowitz,* city attorney of Salem, argued the cause for respondents. With him on the brief was M. B. Hayden, of Salem, district attorney for Marion County, Oregon.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, BRAND and HAY, Justices.

BRAND, J.

Following the precedent set in *Woodward v. Barbur,* 59 Or. 70, 116 P. 101, this court, upon consideration of the cause after it was argued and submitted, affirmed the decree without giving a written opinion, in order that the mandate might go down in time to

be obeyed prior to the election, and the reasons which induced the conclusions will now be stated.

One plaintiff is a public utility having a franchise to serve and serving the public in the city of Salem. Both plaintiffs are taxpayers in the city. The plaintiff Randall is a resident. The Salem Electric is a cooperative organization. The city of Salem by various ordinances has adopted provisions governing the procedure to be followed in the exercise within the city of the initiative and referendum powers vested in the city by the constitution. On or about 19 August, 1948, the Salem Electric and another filed with the city recorder petitions demanding the submission to the people for their approval or rejection of an initiative measure. The complaint alleges that the defendants threaten to place the measure on the ballot. The proposed measure if approved and if valid would grant to the Salem Electric, a franchise to distribute electric energy and to use the public streets for that purpose. It is unnecessary at this time to state the somewhat complicated provisions of the proposed measure or to consider whether it would be valid if approved by the people. The contention of plaintiff is that the proponents of the measure have failed to comply with the procedural requirements, on the compliance with which, the right to place the measure on the ballot depends.

Before we inquire into the regularity of the initiative procedure we must first consider whether the trial court erred in holding that the plaintiffs were without legal capacity to sue. We therefore address ourselves to that question.

■■ The complaint sets forth many respects in which the plaintiffs will suffer loss and inconvenience

*if* the measure is approved by the people and becomes law. But none of those considerations are before us in this suit to restrain defendants from placing the measure on the ballot. We cannot speculate as to the result of the election. The question of the capacity of the plaintiffs to sue must be determined without regard to the provisions of the proposed measure if it should be adopted. The plaintiffs allege that the mere putting of the measure on the ballot will cause damage because plaintiff public utility will be compelled to spend time and money in opposing the measure. This argument is without force. It will spend no time or money unless it so desires.

The complaint discloses no capacity to sue for an injunction unless under our law a citizen and taxpayer is entitled to bring such a suit.

We will first consider the effect of O. C. L. A., § 81-2105 as amended by Oregon Laws 1945, Ch. 85, p. 102. That section is as follows:

"Sec. 81-2105. If the secretary of state shall refuse to accept and file any petition for the initiative or for the referendum any citizen may apply, within ten days after such refusal, to the circuit court for a writ of mandamus to compel him to do so. If it shall be decided by the court that such petition is legally sufficient, the secretary of state shall then file it, with a certified copy of the judgment attached thereto, as of the date on which it was originally offered for filing in his office. On a showing that any petition filed is not legally sufficient, the court may enjoin the secretary of state and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure. All such suits shall be advanced on the court docket and heard and decided by the court as quickly as pos-

sible. Either party may appeal to the supreme court within ten days after a decision is rendered. The circuit court of Marion county shall have jurisdiction in all cases of measures to be submitted to the electors of the state at large; any district attorney of the state of Oregon may initiate and carry to final conclusion in said circuit court of Marion county any proceeding, either in mandamus or injunction, authorized under this act; in cases of local and special measures, the circuit court of the county, or of one of the counties in which such measures are to be voted upon, shall have jurisdiction; the district attorney of the county, or one of the counties, in which such measures are to be voted upon may initiate and carry to final conclusion in said circuit court, any proceeding, either in mandamus or injunction, authorized under this act; in cases of municipal legislation the circuit court of the county in which the city concerned is situated shall have jurisdiction.''

All that portion of the section which precedes the provision concerning special and local measures, clearly refers only to cases of state-wide application which are filed with the secretary of state. The purpose obviously was to correct the defect which this court pointed out in *State ex rel. Johnson v. Farrell,* 175 Or. 87, 151 P. (2d) 636.

■ Following a semicolon the statute prescribes the procedure to be followed in case of the refusal of the proper officer to file a local or special measure. Obviously the term ''local and special measures'' is limited as here used to what have been called quasi-municipal corporations like port districts. In *Acme Dairy Co. v. Astoria,* 49 Or. 520, 90 P. 153, the court said:

''  *  *  *   we believe a fair construction of the words 'local' and 'special,' as used by the framers

of this clause of the organic law, limit their application to such municipal corporations as are described in the case of Cook v. Port of Portland, 20 Or. 580 (13 L. R. A. 533; 27 Pac. 263).

" * * *

" * * * It is true that cities were originally incorporated by special laws, but, as other municipal corporations were created in the same manner, and were in existence when the organic law was amended, we do not think the terms 'local' and 'special', as used in Section 1a of Article IV of the constitution to qualify the word 'legislation,' limit the authority of a city or town to prescribing the manner of exercising the initiative and referendum powers as to the enactment or repeal of ordinances only; for, if such restriction had been intended, it would not have been difficult so to have framed the amendment. * * *"

The context of this portion of Chapter 85 demonstrates that the provision concerning local and special laws does not apply to cities. The express assumption that the measure may be voted upon in one or more counties and that the district attorney of such county or counties may sue in mandamus or for injunction cannot reasonably be construed to apply to a measure in a city election. Again, the provision concerning local and special measures is followed by a provision concerning municipal legislation as to which the circuit court of the county in which the city is located has jurisdiction. If municipal measures were covered by the provisions concerning local and special measures, the legislature would not have added a special provision concerning cities.

If the provision concerning local and special measures applies to city measures, then it is clear that the suit can only be brought by the district attorney.

But we think it does not apply and it follows that there is no statutory provision determining who shall or may bring a suit for injunction to restrain public officers from placing a city measure on the ballot. It follows from the foregoing that we must examine the Oregon decisions in order to determine whether a taxpayer has capacity to sue for injunction in such a case.

*Friendly v. Olcott,* 61 Or. 580, 123 P. 53, appears to be the leading case upon the subject. In that case the plaintiff, a resident taxpayer, brought suit to enjoin the secretary of state from causing a referendum measure to be placed upon the ballot. There was a demurrer upon the ground of lack of legal capacity to sue. The question before the court related to the construction of O. C. L. A., § 81-2105 as passed in 1907. That statute provided that "on a showing that any petition filed is not legally sufficient, the court may enjoin the secretary of state and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title * * *". The statute did not specify who may be plaintiff in such a suit. As to cases of municipal legislation the statute merely provided that the circuit court of the county in which the city is located shall have jurisdiction. The court said:

> "Here the plaintiff would invoke equitable cognizance of a purely political question which, as pointed out in the similar case of State ex rel. v. Dunbar, 48 Or. 109 (85 Pac. 337), is not within the scope of chancery jurisdiction.
>
> " * * * *
>
> "The plaintiff does not show that he will be injured in any property or civil right by the contemplated action of the Secretary of State in certi-

fying the ballot title to the county clerks. Neither will his political right to vote on the measure at the election be infringed. He can then, as always, exercise his electoral franchise unaffected by anything shown in his bill. If he can enjoin the Secretary of State now, he can sue out a writ the day before that officer would certify the ballot title, and thus balk the whole people in the exercise of their constitutional reserve power to reject at the polls any law passed by the legislative assembly. The principle is sound and well settled that as against public officers, where their action involves purely public or political rights, the drastic remedy of injunction can be invoked only by the State acting through its proper law officer. In some instances a suit may be maintained in the name of the State on the relation of a citizen who can show some special injury to his civil or property rights but this case is not in that category. To sustain plaintiff's suit when he shows no injury to his private rights would be a pronounced example of government by injunction.''

*Friendly v. Olcott* is cited with approval in the following cases: *Hickey v. Riley,* 177 Or. 321, 326, 162 P. (2d) 371; *State ex rel. Johnson v. Farrell,* 175 Or. 87, 95, 151 P. (2d) 636; *State ex rel. Carson v. Kozer,* 126 Or. 641, 650, 270 P. 513; *Winslow v. Fleischner,* 110 Or. 554, 560, 223 P. 922; *Libby v. Olcott,* 66 Or. 124, 127, 134 P. 13; *Bellarts v. Cleeton,* 65 Or. 269, 273, 132 P. 961; *State ex rel. v. Olcott,* 62 Or. 277, 278, 125 P. 303.

In *State ex rel. v. Olcott,* supra, a suit was brought by the state of Oregon on the relation of the district attorney against the secretary of state to enjoin the defendant from placing upon the ballot a certain referendum measure. The court, by Mr. Justice McBride, said:

''The facts set forth in the complaint are substantially the same as alleged in Friendly v. Olcott,

61 Or. 580 (123 Pac. 53), and need not be restated here. In that case we held that a private citizen could not bring a suit of this character and dismissed the suit; and thereafter this suit was instituted upon the relation of the district attorney of the third judicial district, having for its object the same relief that was sought in the former proceeding. We regard it as settled by our former opinion that the right to bring a suit to enjoin the Secretary from certifying or printing upon the official ballot the title or number of any measure, when it is shown to be not legally sufficient, resides in the district attorney, and we will not further discuss that phase of the case.''

In *State ex rel. Carson v. Kozer,* supra, a suit was brought in the name of the state on the relation of the district attorney of Marion County to enjoin the secretary of state from placing the proposed initiative measure on the ballot. There was a general demurrer to the complaint and also a demurrer on the ground of lack of jurisdiction of the subject matter of the suit. No demurrer was filed challenging the capacity of the plaintiff to sue. That objection was therefore waived under the provisions of O. C. L. A., § 1-710. A demurrer to the complaint was sustained. The court said:

"Prior to the hearing upon the appeal, application was made by Mr. W. S. U'Ren on behalf of the Oregon State Federation of Labor, the Oregon State Grange of the Patrons of Husbandry, himself and others that they be made defendants in the suit because of the public importance involved in the suit and of their interests as citizens in the result of the suit. By consent of the relator and of the defendant, their application was taken under advisement and they were permitted to appear and to be heard upon the argument. We have had the benefit of an able argument and brief submitted

in their behalf, but after mature consideration of the matter, the court is of the opinion that the interest of the proposed defendants in the result of the litigation was that shared in common by all of the people of the state, and that since no relief could be given against them they were not necessary or proper parties and, therefore, are not entitled to be joined with the Secretary of State as defendants in the suit. Their application will, therefore, be denied.

"But one other matter need be noticed. This suit was instituted in pursuance to the provisions of Section 4099, Or. L., and a suit brought under that section to enjoin the Secretary of State from certifying and printing on the official ballot the ballot title and numbers of an initiative measure which has been filed in his office is one which affects the welfare of the people of the whole state at large and can only be invoked by such executive officers of the state as are by law entrusted with the discharge of such duties, and such suit must be brought in the name of the state: State ex rel. v. Lord, 28 Or. 498 (43 Pac. 471, 31 L. R. A. 473); State ex rel. v. Metschan, 32 Or. 372, 384 (46 Pac. 791, 53 Pac. 1071, 41 L. R. A. 692); Friendly v. Olcott, 61 Or. 580 (123 Pac. 53). The Attorney General is the 'law officer of the state, and shall have all of the power and authority usually appertaining to such office, and shall have charge and control of all the legal business of the state, or of any office or department thereof which requires the services of an attorney or counsel in order to protect the interests of the state.' Section 2773, Or. L.

"The Attorney General did not commence this suit but appeared in opposition to it. Whether under such circumstances the suit could be maintained at all is a question which we are not called upon at this time to determine. We have passed upon the merits of the case and leave this question for further consideration if occasion therefor should hereafter arise."

In *Libby v. Olcott,* supra, the plaintiff was a private taxpayer seeking to enjoin the secretary of state from placing a certain measure upon the ballot. Concerning the plaintiff the court said:

" * * * He describes himself as a citizen, legal voter, and taxpayer within the State of Oregon. He says that by reason of the expenditures necessarily involved in the conduct of the special election, his burden of taxation will be increased, the income from his property diminished, and he will be damaged by the loss of the increased tax money. * * *

" * * * *

"At the outset it may be observed that, although the plaintiff designates himself as a citizen and taxpayer of the state, and avers that his taxes will be increased by the expenditure of public money in connection with the special election in question, yet he does not state anything to show that he will be injured in any manner different from any other citizen and taxpayer. Following the doctrine of *Friendly v. Olcott,* 61 Or. 580 (123 Pac. 53), and cases there cited, the suit of the plaintiff might well be dismissed, without further consideration, on the ground that the courts will not interfere with the political action of a co-ordinate branch of the government by the drastic remedy of injunction, at the suit of any individual who cannot show special injury to himself, not attaching to others, and attending the conduct which he would enjoin."

Since there is no demurrer upon ground of want of capacity to sue, however, the court proceeded to consider the merits of the case, and held that the suit for injunction should be dismissed.

The case of *Winslow v. Fleischner,* supra, was not a suit to enjoin an election, but in the course of the opinion by Coshow, J., the court said:

"This contention is based upon the well-established law in this state that, as against public

officers, the drastic remedy of injunction can be invoked only by the state acting through its proper law officers where only public or political rights are involved. This contention is supported by Sherman v. Bellows, 24 Or. 553 (34 Pac. 549), State ex rel. v. Lord, 28 Or. 498, 527 (43 Pac. 471, 31 L. R. A. 473), State ex rel. v. Dunbar, 48 Or. 109 (85 Pac. 337), Friendly v. Olcott, 61 Or. 580 (123 Pac. 53), and numerous other cases.''

The election cases which we have previously considered have involved suits against the secretary of state, a state officer. But the authorities indicate that the rule applies to public officers whether the office be statewide or local in character. We first observe that the practice which has been followed in suits to enjoin an officer from placing a local measure on the ballot indicates that the proper procedure is to bring the action in the name of the state upon the relation of a district attorney. That practice is illustrated by the three cases next cited.

In *State of Oregon ex rel. v. Boyer, County Clerk,* 84 Or. 513, 165 P. 587, the suit was brought by the district attorney in the name of the state of Oregon to restrain the placing of a certain measure on the ballot. The court considered the case upon the merits and issued the injunction.

In *State ex rel. Van Winkle v. Gilmore,* 122 Or. 19, 257 P. 21, a suit was brought to enjoin the city recorder of Eugene from placing a certain measure on the ballot. The defendant demurred on the ground that the plaintiff was without capacity to sue. The court, by Belt, J., considered the merits of the case, and on the merits dismissed the suit.

The same procedure was followed in *State ex rel. McHenry, District Attorney v. Mack,* County Clerk for

Benton County, 134 Or. 67, 292, P. 306. The suit was to restrain the holding of an election in Benton County, and the suit was again brought by the state upon the relation of a district attorney.

*Priest v. James,* 125 Or. 72, 265 P. 1092, was a suit by a resident and taxpayer to enjoin the submission to the voters of an initiative measure, the purpose of which measure was to create a new port district within the limits of an existing port district. There was a general demurrer only. The objection as to the capacity of plaintiff to sue was waived since it was not raised by demurrer. It appears that the court was conscious of a possible defect with respect to the capacity of the plaintiff to sue. We quote:

> "The cause is here. It presents an important public question, and should be determined upon the merits rather than sent back upon some finely drawn technical distinction. Besides, it appears to the writer to be for the mutual welfare of all the interested parties to have the matter determined now."

It was held in that case that it was impossible to create a port district within another port district, and an injunction issued.

In *Bellarts v. Cleeton,* supra, the plaintiff, as a resident taxpayer, brought suit to restrain the placing of a measure upon the ballot. The proposed measure related to a local option election in Portland. The defendant county judge of Multnomah County and the city officials were joined as defendants, and demurred upon the ground that neither the plaintiff nor any other taxpayer "will sustain an irreparable injury if said election is held". The court apparently

treated this unusual form of demurrer as challenging the capacity of the plaintiff to sue. The court said:

"The complaint does not show, however, that the plaintiff will suffer any particular damage to his person or property, and does not state any facts from which the court could draw the conclusion he announces by the allegation quoted. This subject was considered by this court in the case of Friendly v. Olcott, 61 Or. 580 (123 Pac. 53), where we held: 'That as against *public officers,* where their action involves purely public or political rights, the drastic remedy of injunction can be invoked only by the state acting through its proper law officer.' Injunction cannot be invoked to decide academic questions."

The case of *Woodward v. Barbur,* supra, was brought by a taxpayer against the auditor of the city of Portland to restrain the placing of an initiative measure upon the ballot. There was a general demurrer only. No issue was raised as to the plaintiff's capacity to sue, and that question was therefore waived under the provisions of O. C. L. A. § 1-710. The court considered the case on its merits and dismissed the suit.

It is suggested that the decision of this court in *Tillamook P. U. D. v. Coates,* 174 Or. 476, 149 P. (2d) 558, is inconsistent with our conclusion here. While it may be that there are dicta in the Tillamook case which could be harmonized with the present ruling only with considerable difficulty, there is nothing in the decision itself which presents any direct conflict. In that case the Tillamook Peoples' Utility District and others brought suit to enjoin the county clerk of Tillamook County from submitting to the voters of that district a certain measure. The court enjoined the county clerk from referring the measure to the voters.

This court affirmed. The facts were as follows: At a previous election the voters of the utility district had authorized the issuance and sale of bonds. Thereafter, pursuant to the authority already given, the directors of the district adopted ordinance No. 4 providing for the sale of the bonds. Opponents of the ordinance attempted to invoke a referendum, and filed petitions demanding that ordinance No. 4 be referred to the people of the district for their approval or rejection. To the complaint of the plaintiffs the defendant county clerk merely filed an answer praying for a determination of the issue. Before the clerk had answered, one Jenck, upon leave granted, filed a complaint in intervention seeking the dismissal of plaintiffs' complaint. The plaintiffs filed an answer denying all allegations of the complaint in intervention except as alleged by them. It was only after the case had thus been put at issue and at the beginning of the trial that the intervenor orally demurred to plaintiffs' complaint on the ground of lack of capacity to sue. By reason of intervenor's failure to file such a demurrer prior to the putting of the case at issue on the merits, the objection based on want of capacity to sue was waived. *Beamish v. Noon,* 76 Or. 415, 149 P. 522; 39 Am. Jur., Parties, 98, § 106; 47 C. J., Parties, 185, § 345. Under these circumstances the court was at liberty to consider the merits even if the plaintiff was in point of law without capacity to sue. Upon the merits it was properly held that ordinance No. 4 was an administrative and not a legislative measure and was therefore not subject to referendum.

The decision in the Tillamook case is no authority for the proposition that a private citizen or taxpayer may sue to enjoin an election. In that case the plain-

tiff was a quasi-municipal corporation suing to protect the public interest against a clearly unauthorized attempt to invoke the referendum. It should be said, however, that in view of the provisions of O. C. L. A., § 81-2105, as amended, it would appear that the question as to the capacity of a quasi-municipal corporation to bring suit to enjoin election officials must be re-examined. In the Tillamook case we cited the following authorities as sustaining the proposition that "a private citizen cannot maintain a suit to enjoin a state officer from performing duties imposed upon him by law, unless such private citizen alleges and proves some special damage to himself not suffered by the public at large." *State ex rel. v. Lord,* supra; *State ex rel. v. Metschan,* supra; *Friendly v. Olcott,* supra; *Bellarts v. Cleeton,* supra; and *Libby v. Olcott,* supra. The problem in the pending case does not depend upon the broad proposition which we have just quoted from the Tillamook opinion. Here we are concerned only with the capacity of a private taxpayer to sue to enjoin a public officer from performing acts incident to the calling of an election. In the cases cited, supra, from the Tillamook opinion, *State ex rel. v. Lord* and *State ex rel. v. Metschan* were suits to restrain the unlawful expenditure of funds. No election question was involved. *Friendly v. Olcott, Bellarts v. Cleeton,* and *Libby v. Olcott* were suits to restrain election officers, and, as we have seen, they support the conclusion that private individuals cannot bring such a suit. Following the citation of the cases to which we have referred we said: "Yet the ruling announced in those decisions was not followed in the later case of *Jory v. Martin,* 153 Or. 278, 56 P. (2d) 1903, where it was held that a mere taxpayer

and resident of this state could maintain a suit to enjoin the Honorable Charles H. Martin from receiving or being paid 'for his services as governor of Oregon any sum in excess of $1,500 per year.'"

The decision in *Jory v. Martin* may have liberalized the rule of *State ex rel. v. Lord* and *State ex rel. v. Metschan,* but it has no bearing at all upon the authority of the other cases which deal with suits to enjoin election officials. Suits to enjoin the illegal expenditure of public funds must be distinguished from suits to enjoin election officials from performing duties of a political nature, incident to the calling of an election.

*State ex rel. Johnson v. Farrell,* supra, contains the latest expression of this court upon the pending issue. In that case a suit was brought in the name of the State of Oregon upon the relation of the district attorney of Sherman County against Robert S. Farrell, Jr., as secretary of state, to enjoin him from certifying a certain initiative measure on the official ballot. The suit was brought in Marion County. It was held that the district attorney of Sherman County was without capacity to bring the suit in Marion County. The court, by Justice Lusk, said:

" * * * It purports to be 'a suit by the state in its sovereign capacity, as the guardian of the rights of the people, instituted by its executive law officers', State ex rel. v. Metschan, supra, 32 Or. at p. 384. It has been determined that such a suit to enjoin the secretary of state from certifying an initiative petition can be instituted on the relation of the district attorney for Marion County, the only county in which, under the statute, the suit can be maintained. State ex rel. v. Olcott, 62 Or. 277, 125 P. 303. See, also, State ex rel. v. Snell, 155 Or. 300, 60 P. (2d) 964. The suit cannot be brought on the

relation of a citizen, but only by the state 'through its proper law officer', Friendly v. Olcott, 61 Or. 580, 587, 123 P. 53; State ex rel. v. Metschan, supra, 32 Or. at p. 384; State ex rel. v. Lord, supra, 28 Or. at p. 526. The district attorney, in his own district, is deemed 'the proper law officer', because, in the absence of statutory regulations, he 'possesses the power of the attorney general at common law.' Watts v. Gerking, supra; Gibson v. Kay, supra, 68 Or. at p. 594; State ex rel. v. Duniway, supra; State v. Guglielmo, 46 Or. 250, 257, 79 P. 577, 80 P. 103, 69 L. R. A. 466, 7 Ann. Cas. 976; State ex rel. v. Lord, supra, 28 Or. at p. 528."

The plaintiff in that case asserted that the suit could " 'only be brought upon the relation of the state through one of its prosecuting attorneys, and not by a citizen' ". This court commented as follows: "The latter part of the statement is correct and is supported by *State v. Pennoyer*, supra; *Friendly* v. *Olcott*, supra;".

■■ We consider the rule to be firmly established that a taxpayer does not have legal capacity to sue for an injunction restraining public officers, state or local, from placing a measure upon the ballot, and that if a demurrer is filed upon the ground of want of capacity to sue, the suit may be dismissed. We see no difference in principle between a suit against a state election officer and one against a county or city officer having similar functions relative to elections. We recognize a fundamental distinction between a taxpayer's suit to enjoin an election, which is a political matter, and a taxpayer's suit as in *Jory v. Martin,* supra, to restrain the illegal expenditure of funds where no election is involved. Under the authorities cited, the mere fact that the holding of an election involves some expense and therefore indirectly may affect all tax-

payers, does not authorize us to classify suits to enjoin elections along with the cases in which we have recognized a taxpayer's right to enjoin illegal expenditure of funds in non-political and non-election matters.

Since the plaintiffs were without capacity to sue, the demurrer was properly sustained and the decree dismissing the complaint is affirmed. Neither party will recover costs.