## JOSEPH W. DREXEL *et al.*

### *v.*

## THE TOWN OF LAKE.

*Filed at Ottawa January 25, 1889.*

1. MUNICIPAL CORPORATION—*powers as to public improvements—pumping works as connected with a system of sewerage.* Upon the principle that the grant of a power carries with it, by implication, the right to use all means and instrumentalities necessary to a beneficial exercise of the power, the grant of a general power to construct sewers, without any restriction as to the mode in which they are to be built or operated, must be construed with reference to the situation and requirements of the district in which the sewers are to be constructed, and must be held to confer authority to construct them in such manner and with such appliances as may be necessary to render them serviceable and effective.

2. Where a system of sewerage of the ordinary kind can not be used to advantage, for want of sufficient fall to carry away the contents of the mains and pipes by the force of gravitation, village and other municipal authorities, under a general grant of power to construct main drains and sewers, etc., without any limitation or restriction as to the mode in which they shall be built or operated, will have the right to construct pumping works, to be used in the working and use of the sewers.

3. SPECIAL ASSESSMENTS—*Town of Lake—power to construct sewers—how to be paid for.* The town of Lake, by the fifteenth section of its charter, is vested with power to cause main drains and sewers, private drains and aqueducts, to be constructed, cleansed and repaired; and by section 16 it is provided, that the expense of any such improvement shall be defrayed by special assessments upon the real estate benefited thereby.

4. SAME—*ordinance—whether for distinct improvements.* Where it becomes necessary to establish pumping works in connection with a sewerage system, in order that the latter may be made to serve its proper purpose, and the combined improvement is provided for in a single ordinance, a special assessment to defray expenses of the improvement can not be defeated on the ground the ordinance provides for two distinct improvements, or that it is double.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. Wilson & Moore, and Mr. R. S. Thompson, for the appellants.

Mr. E. J. Harkness, and Mr. R. T. Hollett, for the appellee.

Mr. Justice Bailey delivered the opinion of the Court:

This is an appeal from a judgment of the County Court of Cook county confirming an assessment upon the lands of the appellants, for the construction of a sewer in the town of Lake in said county. Said town embraces a territory six miles square, lying immediately south of the city of Chicago and west of the town of Hyde Park, and is a town incorporated under a special act of the General Assembly approved March 26, 1869. Vol. 4, Private Laws of 1869, p. 324. The town seems also to have adopted the ninth article of the general act of 1872, providing for the incorporation of cities and villages.

It appears that in consequence of the peculiar topography of the territory lying within the town, much of the surface being but a few feet above the level of Lake Michigan, and the remoteness of a proper place to discharge its drainage and sewage, a system of sewers constructed on the ordinary plan, so as to carry off and discharge its surface water and sewage merely by force of gravitation, is wholly inadequate. The town therefore, after taking the advice of careful and competent engineers, has adopted a general system for the construction of sewers, upon the plan of draining the southerly portion of its territory by means of drains and sewers running to a central reservoir or well to be located at or near the corner of Sixty-ninth and Halsted streets, and there constructing pumping works for raising it to a higher level and discharging it by means of a main or trunk sewer, to be constructed along Halsted street from Sixty-ninth street to Thirty-ninth street, into the Stock-yards slip and thence into the Chicago river. The portion of this general system of sewers which the town is now attempting to construct, and for which the assessment

in question is levied, consists of the main or trunk sewer on Halsted street and the pumping works at Sixty-ninth street. The total estimated cost of that portion of the general system now in contemplation is $180,050, the estimated cost of the main sewer being $151,804, of the pumping works $21,746, and of the engineering, superintending and making and levying the assessment $6600.

The plan contemplated by the town for constructing its lateral drains and sewers discharging into the main sewer or central reservoir is partly if not wholly in accordance with what is known as the double, as distinguished from the combined system, that is, by constructing one set of drains for carrying off the storm or surface water, and another and lower system for carrying off the sewage. Accordingly, for the purpose of levying the assessment to defray the expense of constructing the main sewer and pumping works, the territory deemed to be benefited thereby is divided into three districts, the first consisting of that portion of the territory benefited from which both systems of drains are to be discharged into the main sewer, the second of that portion from which the surface water only can be discharged into the main sewer, and where the lower or sewage drains must be carried to the central reservoir, and the third where both systems of drains must run to the central reservoir. The present appeal brings up the case of an assessment upon a tract of land in each of these districts.

The objections urged to the assessment in the court below and now chiefly relied upon relate solely to the construction of the pumping works. These objections are, 1, that the town, by its charter, has no power to erect such works and pay for the same by special assessment, and 2, that the improvement is double, that is, that two entirely distinct and separate improvements are combined and are to be paid for by one assessment.

As to the first of these objections, we are of the opinion that it is unnecessary to go beyond the provisions of the act incorporating the town of Lake to find the requisite power. By the fifteenth section of that act, power is given to the trustees of the town to cause main drains and sewers, private drains and aqueducts, to be constructed, cleansed and repaired, and by the sixteenth section it is provided that the expense of any such improvement shall be defrayed by special assessment upon the real estate benefited thereby. The only question is, whether, in view of the system of sewerage adopted by the town, the pumping works by which the sewage is to be raised or forced from the central reservoir into the main sewer, is to be deemed a part of the sewer, within the meaning of said act. The proposed works are to be constructed and operated upon what is known as the Shone Pneumatic System, which is a mode of pumping by means of compressed air supplied from an air compressor. The compressed air is conducted through iron pipes to receivers or ejectors into which the sewage flows from the sewers. When a receiver becomes full of sewage, an air valve opens automatically, letting in compressed air, and forcing the sewage out of the receiver. The air is then shut off and exhausted, and the process is repeated.

The definition of the word sewer as given by Webster is, "a drain or passage to convey off water and filth underground." Usually the sewage is carried through the sewers and discharged therefrom by force of gravitation. But in very level districts where the point of discharge is little if any lower than the level of the sewer at its commencement, it is manifest that if the sewer is of any considerable length, it can answer no purpose of drainage, if gravitation alone is to be depended upon for the discharge of the sewage. In such districts, a system of sewerage, to be of any avail, must bring into operation some other power or agency. Such new agency then becomes, from the very necessity of the case, an integral part of the sewerage system, and the structures and machinery by

which that agency is operated and brought into play may properly be regarded as essential parts of the sewer. The grant of a power carries with it, by implication, the right to use all means and instrumentalities necessary to a beneficial exercise of the power. Upon this principle, the grant of a general power to construct sewers, without any restriction as to the mode in which they are to be built or operated, must be construed with reference to the situation and requirements of the district in which the sewers are to be constructed, and must be held to confer authority to construct them in such manner and with such appliances as may be necessary to render them serviceable and effective for the purposes for which sewers are designed. If the surface is such as to readily admit of drainage by force of gravitation, sewers should doubtless be so constructed as to be operated by that force alone. But if the surface is so low as to preclude the discharge of sewage at any practicable point by that means, the power to construct sewers would be altogether nugatory unless it is to be construed so as to include the power to use some artificial means to supply or make operative the force of gravitation.

In the judgment of the trustees of the town of Lake the portion of the town which is to be served by the proposed sewerage system is so situated as to be incapable of proper drainage to any practicable outlet by force of gravitation alone. In this judgment they are clearly supported by the facts. The most practicable point for the discharge of the sewage of the entire district seems to be at the Stock-yards slip, which is situated at Thirty-ninth street, the north boundary line of the town. Said district extends entirely across the town, a distance of six miles, and the surface of a considerable area in the southerly part of it is only about six feet above the level of said slip. It is manifest that a district thus situated can not be supplied with sewerage constructed with due reference to efficiency or sanitary requirements, if it must depend upon gravitation alone for the out-flow and discharge of its sewage.

Resort then must be had to such expedients for overcoming the difficulty as modern engineering has developed, and the choice of expedients is within the legislative discretion of the trustees of the town, a discretion with which the courts will not interfere unless clearly abused. By the system proposed, a central reservoir is to be constructed at Sixty-ninth street, about four miles from the Stock-yards slip, into which the sewage from the southerly portion of the district is to flow. There it is to be raised by the pumping works nearly twenty feet and discharged into the main sewer on Halsted street. By this expedient the southerly part of the district is given the advantages of drainage which it would have if its entire surface was raised that distance above its present level.

Without protracting the discussion on this point further, it is sufficient to say that, under the circumstances of this case, the pumping works must be deemed to be an essential and integral part of the sewerage system of the town, and that the power to erect such works must be held to be embraced within the general grant of power to construct sewers given to the trustees of the town by its charter.

Upon the other point raised, viz, that the assessment is for two distinct improvements, little need be said. The pumping works being, as we have already held, a part of the sewer, it is difficult to see how they can be regarded as separate and independent improvements. The pumping works and sewer are no more divisible than are the several parts or sections of the sewer itself. True, the property in the district in which both the storm and sewer drains discharge directly into the main sewer, may be said to derive no benefit from the pumping works, but it is equally true that property adjacent to certain portions of the sewer itself will derive no benefit from the construction of other portions. It may well be urged that property situated near the mouth of the sewer will be in no degree benefited by the construction of those portions situated two or three miles further south. This however is no test by

which to determine whether the improvement is single or double. In *City of Springfield* v. *Green*, 120 Ill. 269, the improvement for which the assessment was levied consisted of the paving of a large number of the streets and alleys of the city, and it was held to be a single improvement. The test there applied was, that the streets and alleys to be paved were so similarly situated with respect to the improvement proposed as to justify treating them as parts of a common enterprise, and therefore a single improvement. In that case the reasons for holding the improvement to be double were much stronger than in this.

Counsel for the appellants raise some question as to the power of the trustees of the town to create districts for sewerage purposes, but at the same time disclaim placing any considerable reliance upon that point. Under these circumstances all we need say is, that they have failed to present any considerations in support of their position in that respect which seem to us to be satisfactory. We find no error in the judgment of the County Court, and it will therefore be affirmed.

*Judgment affirmed.*