Argued February 20, affirmed March 11, 1924.

# W. C. WINSLOW *v.* I. N. FLEISCHNER ET AL.

(223 Pac. 922.)

**Game—Privilege of Hunting Property Right.**

1. The privilege of hunting animals or fowls wild by nature and fit for food is a property right.

**Injunction—"Irreparable Injury" Defined.**

2. An injury to be "irreparable" need not be such as to render its repair physically impossible; it being irreparable when it cannot be adequately compensated in damages or when no certain pecuniary standard exists for the measurement of damages due to the nature of the injury or to the nature of the right or property injured.

**Injunction—Individual may Restrain Enforcement by Officers of Invalid Law When Individual's Property Rights are Affected.**

3. If the threatened enforcement by prosecuting officers of a void statute will affect the property rights of a party, injunction will lie to prevent the menace from being carried into effect; the conduct of the officers being their personal acts in which the state is not involved.

**Constitutional Law—Generally, Court will not Pass upon Validity of Law Unless Disposition of Case Demands It.**

4. Generally, a court will not pass upon a constitutional question and decide a statute to be invalid unless a decision on that point becomes necessary to a determination of the cause.

**Game—Commission's Order as to Close or Open Season must Designate Definite Term—"Any."**

5. Laws of 1921, page 89, Section 8, providing that the State Game Commission shall have power to close any open season or

---

3. Individual's right to enjoin act of public official, see notes in 3 Ann. Cas. 1013; 15 Ann. Cas. 1173.

See 3 C. J., p. 231; 12 C. J., p. 780; 27 C. J., p. 943; 32 C. J., pp. 53, 243.

open any closed season for such time as it may designate, empowers the commission to close or open some designated season for a specific time designated in its order, and not to close or open hunting seasons for all or an indefinite time; as "any" means "one indifferently out of a number."

**Game—Order of Commission Fixing Open Seasons Held Void as Legislation and in Excess of Powers.**

6. An order made by the State Game Commission pursuant to Laws of 1921, page 89, Section 8, which declared that the open season, as defined by Laws of 1921, page 272, Section 10, for deer with horns, and other specified species of game, each year, should be between certain designated dates, the language indicating an intention to make the change permanent, *held* void as amending second mentioned statute and as amounting to legislation and exceeding the power conferred by first mentioned statute.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

This is a suit instituted for the purpose of enjoining the enforcement of an order made by five of the defendants who constitute the State Game Commission of Oregon. The defendants, John H. Carson and George Neuner, Jr., were prosecuting attorneys for Marion and Douglas Counties, respectively, at the time the order was made. The defendants appeared by the Attorney General and filed a motion to strike out parts of the complaint and a demurrer at the same time. The demurrer to the complaint was overruled by the Circuit Court and the defendants refusing to plead further, a decree was rendered in accordance with the prayer of the complaint. The defendants appealed from this decree. The salient allegations of the complaint are as follows:

## "V.

"That throughout the State of Oregon, and particularly throughout Marion and Douglas counties, Oregon, there is now and has been for many years last past wild game known as deer with horns, and that for several years last past said deer have been increasing in quantity in said districts and throughout

the State of Oregon, and have become common game animals and are hunted for sport and for the purpose of procuring meat supplies.

"VI.

"That the laws of the State of Oregon define the open season for hunting said game animals in Marion and Douglas counties, Oregon, as being from August 20 each year to October 31 thereof. * *

"VIII.

"That throughout the State of Oregon, and particularly throughout Marion and Douglas counties in the Willamette Valley and southern Oregon, it has become an established common custom for people to take their vacations from their usual vocations at least by the end of August of each year, and unless plaintiff and others similarly situated are permitted to hunt said deer within the month of August they will be denied the privilege and right of hunting said deer at all.

"IX.

"That plaintiff herein, as well as many other people in the State of Oregon similarly situated, make annual trips to the mountains, and plaintiff particularly in Marion and Douglas counties, Oregon, for the purpose of hunting said deer for sport and for meat supplies, and that the meat usually obtained by plaintiff from hunting said deer is used for family consumption, and the same constitutes one of the material sources of food supply to said plaintiff; and the right to hunt said deer is and has been at all times herein mentioned a material property right to plaintiff with intrinsic value.

"X.

"That plaintiff herein, relying upon the law as defined by the legislature of the State of Oregon, has purchased a license to hunt said deer for the year 1923 and has paid the usual fee therefor, which said license fee expressly authorizes, licenses and empowers plaintiff to take and kill two of said deer, and plaintiff has entered into contractual relations with a packer, by the terms of which plaintiff has obligated himself to pay said packer for packing

plaintiff and others into the mountains and the premises hereinafter referred to, for the purpose of hunting and taking said deer, and said contract is a binding contract and a binding obligation upon the part of plaintiff herein, by the terms of which plaintiff has agreed to pay said packer for said services in packing said plaintiff into the mountains and to said premises for the said purpose in August, 1923.

"XI.

"That defendants mentioned above as the Game Commission of the State of Oregon, subsequent to the time that plaintiff had entered into said contract with said packer, and subsequent to the time that plaintiff had purchased said license, construing Section 8 of Chapter 66 of the laws of the legislative assembly of 1921 as conferring upon said commission general legislative powers, not for the purpose of introducing a new species of game or game animals and not for the purpose of keeping said deer from being exterminated, but acting wholly upon their judgment as to when said season should be opened and when the same should be closed therefor, without making any findings whatsoever showing a necessity and acting wholly arbitrarily, have attempted to change the open season for hunting said deer and have pretended to enter an order, a copy of which is hereto attached marked Exhibit 'A' and made a part hereof, making the open season for hunting said deer September 10 to October 31 of each year, and said Game Commission are now taking steps to publish said order and give notice thereof, pursuant to the terms of said section, and threaten to and will, unless restrained, attempt to put such order into effect and prosecute any and all persons who hunt for or take said deer with horns between August 20 and September 10 of such years.

"XII.

"That plaintiff herein is the owner of real property in Marion County, Oregon, upon which said deer are to be found and hunted in August, and plaintiff is the lessee for hunting purposes of certain real property in Douglas County, Oregon, upon which said deer are

to be found and may be hunted in August; and that plaintiff herein, acting pursuant to his license, so procured as aforesaid, and in keeping with his contract, as above set forth and alleged, and in conformity with the laws of the State of Oregon as enacted by the legislature of the State of Oregon, intends to hunt and take said deer with horns in Marion and Douglas counties, Oregon, on said premises commencing August 20, 1923, for the purpose of procuring said meat supplies for plaintiff and plaintiff's said family, and said Game Commission, as well as said district attorneys, referred to above as defendants, threaten and will, unless restrained by this court, attempt to prosecute plaintiff herein for hunting for and taking said game animals between August 20 and September 10, 1923, and will attempt to continually prosecute plaintiff for hunting upon said premises and taking said deer with horns between said dates.''

The prayer is for a permanent injunction restraining the State Game Commission from putting said order into effect, and the defendants, Carson and Neuner, from prosecuting the plaintiff in case he violates the order of the commission. The order is attached to the complaint as an exhibit, made a part of the complaint, and, in so far as this decision is concerned, is as follows:

"Exhibit 'A.'
"Notice.

"To Whom it May Concern:

"Whereas the State Game Commission of the State of Oregon is authorized under Section 8, Chapter 66, General Laws of Oregon, 1921, to close any open season or open any closed season in any county or district of the State of Oregon for the hunting, shooting, killing and possession of game animals and game birds; therefore

"Notice is hereby given that the State Game Commission of the State of Oregon has made and entered of record and does hereby issue the following:

"Order.

"That the open season as defined in Section 10, Chapter 153 of the General Laws of Oregon, 1921, for hunting, shooting, killing, taking and having in possession, alive or dead, the following named game animals and game birds, respectively, in the State of Oregon, shall be as follows, to wit:

"The open season for deer with horns throughout the entire state shall be in and is hereby declared to be from September 10 to October 31 of each year, both dates inclusive. * *

"Notice is also hereby given that the changes in the open seasons made by this order in nowise affect the bag limits or other regulations provided by law respecting the hunting, shooting, killing, taking or having in possession, alive or dead, of such game animals and game birds.

"Any and all persons hunting for, shooting, killing, taking or having in possession, alive or dead, any deer, silver gray squirrel, Chinese pheasant, bobwhite quail, mountain or plumed quail, California valley quail, blue or sooty grouse, ruffed grouse or native pheasant, sage hens, Hungarian partridges or prairie chickens in the State of Oregon, in violation of this order, will be prosecuted as by law provided.

"Dated at Portland, Oregon, this ninth day of April, A. D. 1923.

"OREGON STATE GAME COMMISSION.
"By I. N. FLEISCHNER,
"Chairman.
"By GEO. H. KELLY,
"Commissioner.
"By BLAINE HALLOCK,
"Commissioner.
"By M. A. LYNCH,
"Commissioner.
"By F. ROY DAVIS,
"Commissioner."

The defendants in this appeal contend that the plaintiff has no legal capacity to sue; that the court is without jurisdiction to enjoin the defendants from

enforcing the order for the reason that the defendants are public officers; the order assailed does not injure the plaintiff in his personal property, and that the plaintiff has a plain, adequate and complete remedy at law.                                        AFFIRMED.

For appellants there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. James West,* Assistant Attorney General, with an oral argument by *Mr. West.*

For respondent there was a brief and oral arguments by *Mr. Wm. H. Trindle* and *Mr. W. C. Winslow.*

COSHOW, J.—The first proposition to be determined on this appeal is the right of the plaintiff to maintain this suit. The defendants, who are the appellants, contend that the plaintiff is without capacity to sue. This contention is based upon the well-established law in this state that, as against public officers, the drastic remedy of injunction can be invoked only by the state acting through its proper law officers where only public or political rights are involved. This contention is supported by *Sherman* v. *Bellows,* 24 Or. 553 (34 Pac. 549), *State ex rel.* v. *Lord,* 28 Or. 498, 527 (43 Pac. 471, 31 L. R. A. 473), *State ex rel.* v. *Dunbar,* 48 Or. 109 (85 Pac. 337), *Friendly* v. *Olcott,* 61 Or. 580 (123 Pac. 53), and numerous other cases.

The plaintiff contends that he has a property right in hunting, which is about to be destroyed by the order of the Game Commission; that said order is void, because, in excess of the authority and power conferred upon the commission.

The law in this state, regarding the right of an individual to invoke the equitable jurisdiction of the courts to enjoin the enforcement of an invalid law, ordinance or order, is well established. In *Friendly* v. *Olcott,* 61 Or. 580, 586 (123 Pac. 53, 55), Mr. Justice BURNETT, speaking for this court, quotes with approval from *State ex rel.* v. *Lord,* 28 Or. 498 (43 Pac. 471, 31 L. R. A. 473), as follows:

"The judiciary acts not upon its own motion, but only when some suitor duly authorized by law presents in due form a cause appropriate for its cognizance. Its machinery may be set in motion by private suitors in some form or other in all cases where civil or property rights are being invaded or intrenched upon to their injury or damage, be the suitor ever so humble or the injury encountered ever so small; but in all cases of purely public concern affecting the welfare of the whole people of the state at large the court's action can only be invoked by such executive officers of the state as are by law intrusted with the discharge of such duties."

If, then, the plaintiff is injured in his person or property by the order of the Game Commission claimed to be void, he is entitled to maintain this suit.

The case of *Bingham* v. *Salene,* 15 Or. 208, 213 (14 Pac. 523, 525, 3 Am. St. Rep. 152), is the leading case in this country upon the nature of the right to hunt. It is there held:

"That the right to enter upon lands of another to cut grass, for pasturage, *for the purpose of hunting,* or for fishing in an unnavigable stream, is an interest in the land, or a right to take a profit in the soil. (Authorities cited.) A grant of a right to kill and take game on the lands of the grantor is a grant of an interest in the land itself and within the Statute of Frauds."

110 Or.—36

This case is cited with approval in *Isherwood* v. *Saline,* 61 Or. 572 (123 Pac. 49, Ann. Cas. 1914B, 542, 40 L. R. A. (N. S.) 299); *Salene* v. *Isherwood,* 55 Or. 263 (106 Pac. 18); *Hume* v. *Rogue River P. Co.,* 51 Or. 237, 244 (83 Pac. 391, 92 Pac. 1065, 96 Pac. 865, 131 Am. St. Rep. 732, 31 L. R. A. (N. S.) 396), and is the support of several text-books announcing the same principle.

"As a general rule every person has the right of hunting and taking game in any place where he has a right to be, so long as he does not infringe upon or injure the rights of others, and in so far [as] he is not restricted by statutory regulations." 27 C. J. 942, § 3.

"As a general rule the exclusive right of hunting or taking game on land or waters owned by a private individual is in the owner of the land or his tenant, unless such right is acquired by another by grant or prescription. This is a *property right* in the owner of the soil but is subject to the right of the state to regulate and preserve the game for public use." 27 C. J., 943, § 4. To the same effect in 19 Cyc. 988, 989, and 14 Cyc. 1142, 1143.

"Where an action at law will not give adequate relief and irreparable injury will result to the owner of a right of hunting, he may obtain an injunction to restrain an unlawful interference therewith." 27 C. J. 945; 19 Cyc. 1002; *McCready* v. *Virginia,* 94 U. S. 391, 394, 395 (24 L. Ed. 248); *Greer* v. *Connecticut,* 161 U. S. 519 (40 L. Ed. 793, 16 Sup. Ct. Rep. 600, see, also, Rose's U. S. Notes); *Sterling* v. *Jackson,* 69 Mich. 488 (37 N. W. 845, 13 Am. St. Rep. 405); *State* v. *Mallory,* 73 Ark. 236 (83 S. W. 955); *Payne* v. *Sheets,* 75 Vt. 335 (55 Atl. 656, 3 Ann. Cas. 852, 67 L. R. A. 773).

The right to hunt ducks on the navigable waters of the state is a public right, to which any citizen may avail himself, subject to the game laws of the

state:   *Ainsworth* v. *Munoskong Hunting & Fishing Club,* 153 Mich. 185 (116 N. W. 992, 126 Am. St. Rep. 474, 15 Ann. Cas. 706, 17 L. R. A. (N. S.) 1236); *Guaranty Realty Co.* v. *Recreation Gun Club,* 12 Cal. App. 383 (107 Pac. 625).

1. The case of *Payne* v. *Sheets, supra,* is a well-considered case, and cites with approval *Bingham* v. *Salene, supra.* Indeed, all of the adjudicated cases are in harmony to the effect that the privilege of hunting animals or fowls, wild by nature and fit for food, is a property right.

2. Whether or not an injury is irreparable depends not upon the magnitude of the injury, but upon the completeness of a remedy in law.   The rule is correctly stated in 22 Cyc. 763, 764, in this language:

"An injury to be irreparable need not be such as to render its repair physically impossible; but it is irreparable when it cannot be adequately compensated in damages, or when there exists no certain pecuniary standard for the measurement of damages * * due to the nature of the injury itself or to the nature of the right or property injured."   32 C. J. 52, 53, § 3.

3. Mr. Justice MOORE, in *Spaulding* v. *McNary,* 64 Or. 491, 497 (130 Pac. 391, 130 Pac. 1128), announced the law in this state, regarding the writ of injunction against a prosecution under a void law, as follows:

"The rule is well established that if the threatened enforcement by prosecuting officers of a void statute will affect the property rights of a party, injunction will lie to prevent the menace from being carried into effect; and that the conduct of such officers, in the case indicated, are their personal acts in which the state is not involved."   (Citing a long list of authorities.)

*Chan Sing* v. *Astoria,* 79 Or. 411 (155 Pac. 378); note to *Thompson* v. *Tucker,* 6 Ann. Cas. 1012, 1013;

*Portland Fish Co.* v. *Benson,* 56 Or. 147, 150 (208 Pac. 122), citing with approval *New Orleans Baseball Co.* v. *New Orleans,* 118 La. 228 (42 South. 784, 118 Am. St. Rep. 366, 10 Ann. Cas., quoting from note in page 760, 7 L. R. A. (N. S.) 1014).

4. Both parties have strenuously argued the constitutionality of the act delegating to the Game Commission the authority under which the order assailed was issued.

In *Elliott* v. *Oliver,* 22 Or. 44, 47 (29 Pac. 1, 2), this court, speaking through Mr. Justice Lord, stated the rule regarding the action of this court, when the constitutionality of a statute is questioned, to be as follows:

"As a general rule a court will not pass upon a constitutional question and decide a statute to be invalid unless a decision upon that very point becomes necessary to a determination of the cause."

This language is cited with approval in *State ex rel.* v. *Lord,* 28 Or. 498, 530 (43 Pac. 471, 31 L. R. A. 473); *Briedwell* v. *Henderson,* 99 Or. 506, 513, 514 (195 Pac. 575), and cases there cited.

Our view of the case renders it unnecessary to determine the constitutionality of the statute. We shall assume it to be constitutional.

5. The part of the statute requiring construction is Section 8 of Chapter 66, Laws of 1921, and is set out in the statement above. The language bearing directly on the instant case is:

"The State Game Commission shall have power at any time to * * close any open season or open any closed season * * for such time as the State Game Commission may designate."

The primary meaning of the word "any" as defined by Webster is "one indifferently out of a num-

ber.'' 3 C. J. 231, § 3. Like all qualifying words, its meaning is largely controlled by its context. Its primary meaning in its singular sense is the sense in which it is used in Chapter 66, Laws of 1921. The context requires that meaning. It is closely connected with and related to the clause ''for such time as the State Game Commission may designate.'' The intention of the legislature was to empower the State Game Commission to close or open some designated season. The statute does not empower the commission to close or open hunting seasons for all or an indefinite time. The time during which the State Game Commission may close or open a season is a designated time. That time is to be a specific time designated in the order of that commission.

6. An examination of the order assailed in this suit discloses that it is unlimited as to time and season. In effect it amends Section 10, Chapter 153, Laws of 1921. The language of the opening paragraph of the order admits of no other construction. It reads:

''That the open season as defined in section 10, chapter 153 of the General Laws of Oregon, 1921, for hunting, shooting, killing, taking and having in possession, alive or dead, the following-named game animals and game birds, respectively, in the State of Oregon, shall be as follows, to wit:

''The open season for deer with horns throughout the entire state shall be in and is hereby declared to be from September 10 to October 31 of each year, both dates inclusive.''

Then follows ten other paragraphs each dealing separately with a separate species of game. It does not embrace all of the game animals covered by said Section 10, but does most of them; and in some instances specifies the same dates as are specified in

said Section 10. Its language indicates that it is intended to make the change permanent, for the expression "for each year" is employed in every paragraph. The order amounts to legislation and is in excess of the power conferred upon the State Game Commission by said Chapter 66.

The orders of the State Game Commission are not required to be published as a statute. They must be published twice in a newspaper and be posted in such public places in each county as the State Game Commission may direct. If valid at all, the order is permanent. One desiring to exercise the right of hunting in twenty years from the date of the order could qualify under the laws of the state as published by authority of the state and, yet, by violating that order, be subject to a fine and imprisonment for violating, not the law of the land, but an order of the State Game Commission of which he had never heard and which he could not find, because it had been published only in a newspaper and posted somewhere in the county twenty years before. Such a condition is repugnant to fundamental elements of our civilization, and contrary to our system of administering justice. The illustration may be extreme, but is within the scope of the order.

For these reasons, the order is beyond the power of the State Game Commission and void.

The decree of the Circuit Court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BURNETT and RAND, JJ., concur.