Argued July 14, affirmed September 15, 1925.

# FREDERICK M. DE NEFFE *v.* WM. DUBY ET AL., CONSTITUTING THE STATE HIGHWAY COMMISSION.

### (239 Pac. 109.)

**Highways—Taxpayer cannot Enjoin Reconstruction of Highway Where No Special Injury Sustained.**

1. A taxpayer cannot enjoin reconstruction of highway funds for which are provided in Sections 4487–4503, Or. L., where there is no allegation or proof showing that he will sustain special injury not sustained by general public.

**Injunction—Statutory Requirement That Contract be Let to Lowest Responsible Bidder Involves Discretion by Officials not Interfered With by Court.**

2. Statute requiring contract for building roads to be let to lowest responsible bidder involves discretion in public officials, which will not be interfered with by courts, though contract is not awarded to lowest bidder.

**Highways—Commission Need not Specify Kind of Paving, but may Call for Alternate Bids.**

3. A highway commission, in contracting for building of road, need not specify in advance kind of paving to be laid, but may call for alternate bids if they embody standard specifications required by Section 4462, Or. L.

**Highways—Commission may, Under Statute, Reconstruct Paved Road, Word "Improvement" not Confined to Dirt Roads.**

4. The highway commission, under Sections 4428, 4432, Or. L., as amended by Laws Sp. Sess. 1920, page 57, adopting Act Cong. July 11, 1916 (U. S. Comp. Stats., §§ 7477a–7477i), has authority to reconstruct a road already paved, the word "improvement" in the statute not being confined to dirt roads.

**Injunction—Question of Necessity of Paving Road Within Discretion of Commission not to be Interfered With by Courts.**

5. Whether condition of a road is such as to require reconstruction is a matter within discretion of highway commission, not to be interfered with by court.

---

See (1) 29 C. J. 599.    (2) 32 C. J. 253.    (3) 29 C. J. 607.    (4) 29 C. J. 589 (Anno.).    (5) 32 C. J. 253.

---

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

This suit was instituted to enjoin the State Highway Commission from entering into a contract with

---

1. See 14 R. C. L. 329.

Simonsen & Hefty for the reconstruction of 9.2 miles of the Columbia River highway between Astoria and Svensen. Advertisements inviting bids were made under the authority of the State Highway Commission for three kinds of pavement, designated Alternate "A," Alternate "B" and Alternate "C." Seven bids were received in response to this advertisement for Alternate "A." Other bids were received for Alternate "B" and Alternate "C." Simonsen & Hefty were the lowest bidders for Alternate "A." The Warren Construction Company was the lowest bidder for Alternate "B" and Alternate "C." The bid of Simonsen & Hefty was accepted by the Highway Commission, notwithstanding it was over $9,000 higher than the bid under Alternate "B," and over $3,000 higher than the bid under Alternate "C." The plaintiff and appellant bases his cause of suit upon two contentions, namely: First, that the Highway Commission is not authorized to award a paving contract to a high bidder. Second, that the Highway Commission was without authority of law to destroy a constructed pavement in a designated locality which was 95 per cent usable and which, with slight repairs, could be maintained as a usable pavement for years to come. In addition to meeting these contentions the defendants and respondents contend that the plaintiff is without capacity to sue.

A temporary injunction was granted. When the issues were framed and joined the defendants moved to dissolve the injunction. Plaintiff tendered evidence in proof of his contention that the section of the highway proposed to be reconstructed was 95 per cent good and was usable for many years, with reasonable repairs. The Circuit Court dissolved the injunction, dismissed the complaint and awarded costs

to the defendant.   From this decree and judgment
the plaintiff appeals.                          AFFIRMED.

For appellant there was a brief over the names of
*Mr. R. W. Hagood* and *Messrs. Bowerman & Kava-
naugh,* with an oral argument by *Mr. Jay Bowerman.*

For respondents there was a brief over the names
of *Mr. I. H. Van Winkle,* Attorney General, and
*Messrs. Malarkey, Seabrook & Dibble,* with an oral
argument by *Mr. J. M. Devers.*

COSHOW, J.—The plaintiff bases his right to
maintain the suit on the allegations that he is a resi-
dent and legal voter of the state and is a taxpayer;
that he regularly pays a license tax upon one auto-
mobile and regularly purchases gasoline in the State
of Oregon for the operation of his gasoline driven
motor vehicle, and that during the year 1925 had pur-
chased and paid the tax to the State of Oregon upon
more than 100 gallons of gasoline.

The defendants contend that it is incumbent upon
the plaintiff to show that, as a taxpayer, he is specifi-
cally and specially injured by reason of the conduct
and acts of the Highway Commission, and that he
will suffer a wrong or injury differing from that sus-
tained by the general public; that the plaintiff has
not alleged facts which disclose his legal capacity to
prosecute this suit; that before he can enjoin the acts
of a public official with respect to the expenditure of
public funds for the creation of a debt, must allege
and show that if such conduct is not restrained he will
sustain an injury not sustained by the general public,
and that his burden of taxation will be increased by
reason of the threatened acts.

1. Chapter 5 of Or. L., 1920 Edition, provides a highway fund, out of which the construction and upkeep of the state highways must be paid. There is no allegation in the complaint or proffered evidence that tends to prove that plaintiff would suffer any peculiar or special damage by the reconstruction of the portion of the highway mentioned.

The plaintiff cites, as his authority for his right to maintain this suit, *Sherman* v. *Bellows,* 24 Or. 553, 556 (34 Pac. 549). In page 557 of that opinion is this language:

" * * If his property will not be subjected to an additional burden of taxation, and he will not sustain any other personal damages, his injury is not contradistinguished from that of all other taxpayers of the municipality, and he cannot invoke the aid of .equity to prevent an unlawful corporate act, however much he may, in common with others, be injured: *Seager* v. *Kankakee County,* 102 Ill. 669. His special injury is the gist of the suit and unless it is alleged and proved, there can be no equitable relief in such cases: *McDonald* v. *English,* 85 Ill. 236. In no case has it ever been held that a private individual may maintain a bill to enjoin a breach of public trust (in the absence of statutory authority) without showing that he will be specially injured thereby: Angell, Highways, § 284."

This case has been frequently cited with approval in this court, and as late as *Winslow* v. *Fleischner et al.,* 110 Or. 554 (223 Pac. 922), where other cases are cited. This conclusion would justify an affirmance of the decree appealed from.

2. Owing to the public importance of the authority of the Highway Commission, questioned in the other contentions of the plaintiff, we deem it advisable to pass also on those contentions. The power of a public commission or municipality to award a contract

to a high bidder where the statute requires the contract to be let to the lowest responsible bidder has been before the courts of this country frequently. Almost without exception it has been held that letting a contract to the lowest responsible bidder involves a discretion on the part of the officials who have been charged with the duty of letting contracts for public works with which discretion the courts are not authorized to interfere: Donnelly, Law of Public Contracts, § 122; 3 McQuillin, Municipal Corporations, § 1228; 26 American & English Annotated Cases, 1913A, note beginning in page 500, where the matter is discussed at length and many cases cited; 38 L. R. A. (N. S.), note beginning in page 654.

3. Plaintiff contends that the call for alternate bids was unlawful; that the Commission should have specified in advance the kind of pavement selected and that it had no authority to award a contract without specifying in advance the particular kind of pavement to be laid. The greater weight of authority is to the contrary. Note in 30 L. R. A. (N. S.), beginning in page 221, under the heading, "Bids on alternative materials or work." The same contentions made by the plaintiff in this suit were made by the Attorney General in the case of *Attorney General* v. *Detroit*, 26 Mich. 263, where the court, speaking through Mr. Justice Cooley, used this language in page 269 and following:

" * * The requirement that contracts shall be let to the lowest responsible bidder is, in many cases, peculiarly susceptible of abuse. Its purpose is, to secure competition among contractors for public works and supplies, and to give the public the benefit thereof. In some cases the most ample competition would be invited by presenting to bidders complete and particular specifications, which indicate the pre-

cise things wanted or which are to be done, and leave nothing to discretion or negotiation afterwards. * *

"Now, if the purpose of the charter is to secure competition in work or supplies for the public, something is necessarily left to the discretion of the council; and they must determine in each case what competition the nature of the case will admit of, and what is the best method to secure it. * *

"I do not doubt that it was competent for the council, in this case, to have confined the bids to what is called the Ballard pavement. But if this had been done, it must be obvious that the best method would not have been adopted to invite competition, or to obtain cheap pavements. * * But if another kind was of nearly equal value, competition might, perhaps, be had by putting the one against the other, and inviting bids for both. The greater the number of such pavements, the larger is the opening for competition. * * The broader the door that is opened to competition; the greater will be the number of those who will be interested in watching the proceedings to see that just awards are made, and impartial judgments pronounced. * *

"When bids are thus called for, all bidders for a particular kind of pavement are bidders against all others, in a certain sense, but they are also bidders against each other in a more particular sense. It would be the duty of the council, when all bids were in, to examine all, and to select the kind of pavement for which the bids, all things considered, were relatively the lowest. They might thus, perhaps, reject the kind they would have preferred in advance, but for which they find all bids exorbitant, and determine upon another, because, in their opinion, the offers made for it are more satisfactory."

In the same case, in page 275, Chief Justice CHRISTIANCY said:

"I concur with my brother Cooley, that the mode adopted for advertising for bids for the pavement, was legal and proper."

In page 276, he said:

"When the pavement of a street is in contemplation, there are two kinds of competition which it is very desirable to create among those who may wish to undertake the work: *First,* That between the *different kinds of pavement,* or those prepared to engage in putting them down; and *second,* that between parties prepared to put down the *same kind.*"

This is a leading case on the question involved and has been frequently cited with approval by the highest courts of other jurisdictions: *City of Connersville* v. *Merrill,* 14 Ind. App. 303 (42 N. E. 1113); *Muff* v. *Cameron,* 134 Mo. App. 607 (114 S. W. 1125, 117 S. W. 116); *Warren Deposit Bank* v. *Fidelity & Deposit Co.,* 116 Ky. 38 (74 S. W. 1111); *City of Detroit* v. *Circuit Judge,* 79 Mich. 384 (44 N. W. 622); *Parker* v. *Philadelphia,* 220 Pa. 208 (69 Atl. 670); *Barber Asphalt Paving Co.* v. *Gaar,* 115 Ky. 334 (73 S. W. 1106); *Baltimore* v. *Flack,* 104 Md. 107 (64 Atl. 702); *Johns* v. *Pendleton,* 66 Or. 182 (133 Pac. 817, 134 Pac. 312; Ann. Cas. 1915B, 454, 46 L. R. A. (N. S.) 990). This latter case, by inference, announces the same principle. In page 194 of 66 Or., Mr. Justice McBRIDE said:

" * * Suppose the council had called for bids for half a dozen different kinds of pavement retaining the right to select that one which in its judgment was the best. It is plain that, if it were so disposed, it could have selected gravel bitulithic, and the plaintiff would have been without remedy. In this contention we are conceding for the purposes of the argument, without so deciding, that such alternative notice would comply with the terms of the charter, which required the council to determine in advance of the notice for bids the kind and character of the improvement."

The purpose of requiring bids to be invited is to secure competition. By this, experience has taught that the best results are obtained. For the protection of the public the statute requires the Highway Commission to adopt standard specifications: Or. L., § 4462. All of the alternative bids invited embodied these standard specifications. The bid of Simonsen & Hefty was the lowest of the seven bids for Alternative Proposal "A." Thus the public had the benefit of competition, not only as to prices but also as to different standard pavements lawfully adopted by the Highway Commission.

4. It cannot be denied that the legislature of the state has paramount authority over the highways of the state. It has delegated some of that authority to the Highway Commission: Or. L., §§ 4428 and 4432, as amended; *Tripper et al.* v. *Couch et al.*, 110 Or. 446 (220 Pac. 1012); *Rockhill* v. *Benson,* 97 Or. 176 (191 Pac. 497).

The contention of the plaintiff that the Highway Commission has no authority to reconstruct a road if it has been paved cannot be sustained. The act of 1920, enacted at Special Session of 1920, and designated as Chapter 31 of the General Laws of Oregon for 1920, specifically adopted Chapter 241, 39 United States Statutes at Large, Part 1. That statute expressly provides that construction shall include reconstruction. It is conceded in this suit that the proposed improvement of the Columbia River highway, attacked in this proceeding, is a post-road, and the improvement intended to be made is done in cooperation with the federal government. The latter is to bear 60 per cent of the costs of the improvement.

" * * For the construction or improvement and maintenance of rural post roads the good faith of the

state is hereby pledged to make available funds sufficient to equal the funds apportioned to the state by or under the United States government during each of the five years for which federal funds are appropriated by section 3 of the said act, and to maintain the roads constructed or improved with the aid of funds so appropriated and to make adequate provisions for carrying out such maintenance. The good faith of the state is further pledged to make available funds at least sufficient when combined with the funds made or to be made by the several counties to equal the sum apportioned to the state by the secretary of agriculture under the rules and regulations approved by him for carrying out section 8 of the act of congress; provided, that funds made so available from the state highway fund shall be spent only upon the highways comprising the system of state roads; and the good faith of the state is further pledged to maintain such roads and to make adequate provisions for carrying out such maintenance, and other acts of congress for similar purposes." Section 4432, General Laws of Oregon, as amended by Special Session 1921, p. 33.

5. Our statute uses the word "improvement" frequently. The Highway Commission is authorized to improve the roads of the state. The word "improvement" is not confined in its effect or meaning to dirt roads. The section of the Columbia River highway proposed to be improved is one of the early paved roads in the state. The traffic on that road was then comparatively light. It has rapidly and marvelously increased. The road as then constructed was probably reasonably adequate and safe for the traffic as it then existed. Owing to the increased traffic and weight of the vehicles traveling over the road, it may be that it is not either adequate or safe. Whether or not it is must be determined by the Highway Com-

mission.  That is a matter committed to it by the legislature and in the exercise of its discretion and judgment the courts have no right to interfere.  The record discloses that the grades of parts of the road proposed to be improved are below the standard fixed as necessary for the public convenience and safety, and many of the angles too acute.  We believe it to be within the power of the Commission to improve any of the roads in the state adopted as state highways and over which that Commission is given authority by the statutes of the state and which, in its judgment, public safety and welfare require to be improved.  We believe the enactments of the legislature, construed together, confer that power upon the Highway Commission.

No allegation of collusion or fraud is made in plaintiff's complaint.  There is no intimation that the Commission has not acted in good faith, according to its best judgment.  The decree appealed from is affirmed, with costs in favor of the respondents.  AFFIRMED.