Argued May 10, affirmed June 29, rehearing denied July 27, 1926.

## PIONEER REAL ESTATE CO. *v.* CITY OF PORTLAND ET AL.

(247 Pac. 319.)

**Municipal Corporations.**

1. "Sewers" differ from "drains" only in that former are in cities, and generally covered over, while latter are in rural communities and open.

**Municipal Corporations.**

2. "Sewage system" is for drainage of foul waters of community, and term "sewerage" is often used to indicate anything pertaining to sewers.

**Municipal Corporations.**

3. Ordinance provisions will not be extended to accomplish improvement entirely foreign to contemplation of charter.

**Municipal Corporations.**

4. Ordinance provisions beyond scope of power granted to municipality are void.

**Municipal Corporations.**

5. Municipal corporation can exercise no power not expressly conferred, or necessary to effectuate such powers, or essential to manifest objects and purposes of corporations.

---

3. See 19 R. C. L. 811.

5. Powers of municipal corporation, see notes in 16 Ann. Cas. 1096; 1 L. R. A. 169. See 19 R. C. L. 768.

*Municipal Corporations.*

6. Portland city council alone, within discretion conferred by charter, may determine when and where sewer system shall be established, and nature thereof.

*Municipal Corporations.*

7. Whole charter, preceding charters and object of legislation creating municipality, should be considered in construing particular section.

*Municipal Corporations.*

8. City charter is law, and should be given construction best calculated to advance object by suppressing evil and securing benefits intended.

*Statutes.*

9. Words of law should be given broad meaning to aid clear and manifest intent.

**Municipal Corporations—Rule of Strict Construction Does not Apply to Discretionary Mode Adopted to Execute Powers Plainly Granted to Municipality.**

10. Rule of strict construction does not apply to modes adopted by municipal corporations to execute powers expressly or plainly granted, where not limited or prescribed by legislature, but left to discretion of municipal authorities; reasonableness being usual test of validity.

*Statutes.*

11. Everything necessary to carry out, and make effectual and complete, a power conferred by statute will be implied.

*Statutes.*

12. That which is implied in law is as much part of it as that expressed.

**Municipal Corporations—Sewer System Ordinance is not Invalid Because Most Expense will be for Protecting Wall and Pumping Plant Necessary to Effectuate Purposes.**

13. That most expense of constructing sewer system will be for protecting wall and pumping plant, so that system may effectuate purpose, does not invalidate ordinance authorizing improvement.

*Municipal Corporations.*

14. Power to secure outlet for sewer beyond municipal boundaries is implied from express authority to construct sewer within them.

*Municipal Corporations.*

15. Authority of city to construct sewer system to protect public health carries power to build system that will effectuate purpose.

9. See 25 R. C. L. 968.
12. See 25 R. C. L. 979.

Municipal Corporations—Provisions of Sewage System Ordinance for Protecting Wall, Fill, Pump-house and Pumping Machinery Held Within Scope of Portland City Charter.

16. Sewage system ordinance, providing for protecting wall, fill, pump-house and pumping machinery to exclude backwater, seeping waters, and flood waters therefrom, *held* within scope of Portland city charter.

---

Municipal Corporations, 28 Cyc., p. 258, n. 38, p. 266, n. 12, p. 268, n. 75, p. 917, n. 63, 67.
Sewer, 35 Cyc., p. 1449, n. 71.
Statutes, 36 Cyc., p. 1107, n. 31, p. 1111, n. 59, p. 1128, n. 54.

From Multnomah: James U. Campbell, Judge.

In Banc.

Plaintiff seeks a restraining order to enjoin defendants from the construction of a system of sewerage the estimated cost of which is approximately $2,068,620, upon the alleged ground of the invalidity of the ordinance providing therefor, entitled:

"An Ordinance to provide for the time and manner of constructing a sewer and drainage system known as the 'Front Street Intercepting Sewer and Drainage System.'"

That ordinance provides, in part:

"The City of Portland Does Ordain as Follows:

"Section 1. There shall be constructed as herein provided a sewer and drainage system known as the 'Front Street Intercepting Sewer and Drainage System.' * *

"Said system embraces two parts, one coming from the south and other from the north, with the junction in Ankeny Street, where the branches unite and proceed to a pumping plant to be located on the harbor line near the foot of Ankeny Street. The intercepting sewer from the south will begin at a point 12 feet south of the south line of Jefferson Street and 23 feet easterly of the westerly line of Front Street, and running thence northerly in Front Street to the junction above indicated. The northerly portion will

begin at a point 30 feet north of the south line of Glisan Street and 18 feet east of the west line of First Street extending north and running thence to a point 15 feet south of the north line of Flanders Street, and 104 feet east of the west line of First Street; thence to a point 18 feet north of the south line of Everett Street and 118 feet east of the east line of First Street; thence to a point 18 feet north of the south line of Davis Street and 170 feet east of the east line of First Street; thence to a point 18 feet north of the south line of Couch Street and 23 feet east of the west line of Front Street; thence in Front Street to said junction.

"Said system is intended to act as a large drain for surface drainage, as well as for intercepting all of the sewers from the west used for sanitary sewage, as well as surface drainage. In addition, the present Flanders Street sewer will be reconstructed from a point 30 feet west of the west line of Second Street to said intercepting sewer.

"As a portion of this system, it is intended that 24-inch drains will be constructed from the manholes of the intercepting sewer to a concrete wall to be built along the harbor line, as well as from the manhole on the intercepting sewer on Davis Street to the wall on the harbor line at the foot of Davis Street.

"A concrete wall along the harbor line is intended to be constructed as a part of this system, such wall to begin at the North line of Madison Street on the West harbor line of the Willamette River, and extending to a point on said harbor line 30 feet northerly of the north line of Glisan Street, in order to protect the sewer and drainage system and maintain its operation during high water stages of the river.

"The system embraces also a pumping plant consisting of two 10,000 gallon per minute and three 30,000 gallon per minute pumps located in the pumping plant building to be placed along the harbor line near the foot of Ankeny Street."

The ordinance likewise provides for a fill in the low ground back of the wall. It further provides that the cost of construction of the system shall be assessed upon the property specially and peculiarly benefited thereby and described in the ordinance.

The plaintiff contends that the project embraces many features other than those appertaining to a sewer; that the construction of the wall, the making of the fill behind such wall, and the construction of the pumping plant and the installation of the pumps therein is foreign to the contemplation of the charter of the City of Portland and therefore beyond the power of the council under Section 389 thereof. That section provides:

"The council is hereby authorized and empowered, whenever it may deem that the public health, interest, or convenience may require, to order to be constructed and laid all sewers and drains, with all necessary manholes, lamp holes, catch-basins, and branches, and to repair or relay the same, and to levy and collect an assessment upon all lots and parcels of land specially benefited by such sewers and drains, to defray the whole or any portion of the cost and expense thereof, and to determine what lands are specially benefited by such sewer, and the amounts to which each lot or parcel of land is benefited."

The plaintiff corporation is the owner of real property described in the ordinance and subject to assessment for the proposed improvement. It avers that the proposed wall, pumping plant, pumping plant building and fill constitute no part of the intercepting sewer referred to in the ordinance assailed, and that "the construction thereof by the City of Portland as aforesaid is an arbitrary, capricious, and unlawful exercise of discretion vested in said city."

Upon the hearing, the trial court decreed that the suit be dismissed with prejudice, and that defendants have and recover their costs and disbursements. The plaintiff appeals.    AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Angell, Fisher & Sabin,* with oral arguments by *Mr. R. L. Sabin, Jr.,* and *Mr. Homer D. Angell.*

For respondents there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. L. E. Latourette,* Deputy City Attorney.

BROWN, J.—The plaintiff assails the validity of the ordinance for the reason, it asserts, that the project embraces many features other than those pertaining to a sewer and therefore is beyond the power conferred upon the City of Portland by its charter. Plaintiff says in its brief:

"The question before the court is to determine whether or not the proposed construction constitutes a sewer, manhole, lamp hole, catch-basin, or branch sewer. If it does the respondent should prevail. If it does not, the appellant should prevail."

The testimony in the record proves beyond peradventure that the sanitary conditions in the proposed reclamation district require effectual sewering. It is unnecessary to set down the evidence relative to the unsanitary condition of the real property described, for the plaintiff, in its reply brief, frankly admits that—

"The testimony shows that the present sewers do not function properly; that portions of the city are sometimes flooded; that many of the basements are flooded annually; that the river front is unsightly and unsanitary; that rats abound in portions of the dis-

trict; and that the lower portion of the district will fall into permanent disuse for business purposes unless something is done.''

1. The term ''sewer'' has often been defined. The following definition quoted by plaintiff is especially clear and concise:

''Drainage laws are closely akin to sewer laws. In fact, the only difference between the two is that they are called sewers in cities and closely populated communities, while they are called drains in rural and agricultural communities, and the further difference that sewers are generally covered over to prevent the escape and dissemination of foul odors and noxious gases, and conceal the passage of their contents through the streets, while drains are open. There is, however, no difference in the legal principles applicable to the two.'' *Mound City Land & Stock Co.* v. *Miller*, 170 Mo. 240, 252 (70 S. W. 721, 724, 94 Am. St. Rep. 727, 60 L. R. A. 190).

As to the broad scope embraced within the term ''sewer'' from ancient times, see Black's ·Law Dictionary, ''Sewer.''.

2. A sewage system has for its purpose the collection and drainage of the four waters of the community. The term ''sewerage'' is often used to indicate anything pertaining to sewers: Sewerage and Sewage Treatment, Babbitt.

''There were very few well-built sewers in this country, prior to 1875, and no city which was equipped with a thorough system. Since 1880 great progress has been made in this branch of sanitary engineering in America.'' The Americana, p. 265.

As illustrative of the need of the proposed improvement, we quote the following from an eminent authority:

"Experience has shown, and continues to show, that the increase of population may be inhibited by accumulations of human waste in populous districts. The removal of these wastes is therefore essential to the existence of our modern cities." Sewerage and Sewage Treatment, Babbitt, p. 1.

3-5. If the construction of the wall is an improvement entirely foreign to the contemplation of the charter, the provisions of the ordinance relating thereto will not be extended to accomplish such purpose. All provisions of an ordinance beyond the scope of the power granted to a municipality are void. A municipal corporation, being a creature of the law, can exercise no powers not expressly conferred upon it by the act of the lawgivers calling it into being, or such as are necessary to effectuate the power so conferred or essential to the manifest objects and purposes of the act: *City of Corvallis* v. *Carlile,* 10 Or. 139 (45 Am. Rep. 134); *Beers* v. *Dalles City,* 16 Or. 334 (18 Pac. 835).

The question of the building of the wall, the erection of the pump-house, the installation of the pumping machinery therein, or the making of the fill, as an independent proposition, is not before us for consideration. However, if their construction may be regarded as necessary means or instrumentalities in making the proposed sewer system effectuate its purpose, then such construction is within the power granted the City of Portland by its charter. There is much testimony to the effect that the flood waters of the Willamette River obstruct the flow of the sewage and cause the filling of basements and the overflow of some of the streets within the district described in the ordinance, resulting in an unsanitary condition that menaces the public health.

6. Under the charter of the City of Portland, the authority to determine when and where its sewer system shall be established, and the nature thereof, is vested in the city council alone, so long as it keeps within the discretion conferred upon it by that law: *Applegate* v. *Portland*, 53 Or. 552 (99 Pac. 890); *De Neffe* v. *Duby*, 115 Or. 511 (239 Pac. 109); 4 McQuillin, Municipal Corporations, §§ 1435, 1834, 1835, 1837; 2 Smith, The Modern Law of Municipal Corporations, § 1169.

7–9. Now, referring to the authority of the municipality to cleanse itself of nuisances in the manner provided by the ordinance: The whole charter, the preceding charters, the object of the legislation in creating the municipality, should be considered in construing a particular section thereof: 1 Smith, The Modern Law of Municipal Corporations, § 82. The charter is a law and should be given that construction which is best calculated to advance its object by suppressing the evil and securing the benefits intended: 36 Cyc. 1111. Moreover, where the intent of a law, is clear and manifest, words should be given a broad meaning to aid such intent: 2 Sutherland, Statutory Construction, § 590.

10. Relative to the matter of construction of charters of municipalities, Judge Dillon, in his work on Municipal Corporations, vol. 1, § 239, puts clearly before us the generally accepted rule in words following:

"The extent of the powers of municipalities, whether express, implied, or indispensable, is one of construction. * * The rule of strict construction of corporate powers is not so directly applicable to the ordinary clauses in the charter or incorporating acts of municipalities as it is in the charters of private corporations; but it is equally applicable to grants

of power to municipal and public bodies which are out of the usual range. * * The rule of strict construction does not apply to the *mode adopted* by the municipality *to carry into effect powers expressly or plainly granted,* where the mode is not limited or prescribed by the legislature, and is left to the discretion of the municipal authorities. In such a case the usual test of the validity of the act of a municipal body is, whether it is reasonable, and there is no presumption against the municipal action in such cases."

11, 12. The charter of the City of Portland, without limitation or restriction, confers upon the city council the express authority to construct sewers for the preservation of the public health, interest and convenience. It is a well-known rule of statutory construction that, where a power is conferred by an act, everything necessary to carry out that power and make it effectual and complete will be implied. Further, that which is implied in a law is as much a part of it as that which is expressed. These long-established principles of statutory construction are universally recognized: Endlich, Interpretation of Statutes, § 418; 2 Sutherland, Statutory Construction, § 508; *Wilson County* v. *National Bank,* 103 U. S. 770 (26 L. Ed. 488, see, also, Rose's U. S. Notes) ; 25 R. C. L. 980.

In *Clarke* v. *Inhabitants of Town of Brookfield,* 81 Mo. 503 (51 Am. Rep. 243), the Supreme Court of that state ruled that power granted to a municipality "to prevent and extinguish fires" carried with it by implication the power to erect a fire-engine house.

In *State ex rel. Wahl* v. *Speer,* 284 Mo. 45 (223 S. W. 655), it was held, in effect, that Section 11, Article X, of the Constitution of that state, which authorized an increase in indebtedness of the county for the erection of a courthouse, carried with it by

implication the power to incur an indebtedness for a courthouse site.

In *Bateman* v. *Colgan,* 111 Cal. 580 (44 Pac. 238), it was held that the granting of power to construct a depot building implied power to employ an architect.

In *Hudgins* v. *Mooresville Consol. School Dist.* (Mo.), 278 S. W. 769, the court held that the authority to erect a schoolhouse carried with it the authority to render the building useful by equipping it for school purposes.

As a further example of a statute carrying with it an implied power, see *Dooley* v. *Penn. R. Co.,* 250 Fed. 142.

In *Aransas County* v. *Coleman Fulton Pasture Co.,* 108 Tex. 216 (191 S. W. 553), bonds were issued to build graveled highways; and in its decision the court held that the power to build roads included the power to build a bridge several miles in length across a bay in order to connect the different parts of the road system.

In *Imperial Irr. Co.* v. *Jayne,* 104 Tex. 395 (138 S. W. 575, Ann. Cas. 1914B, 322), it was held that an act authorizing the formation of a corporation for irrigation purposes and to construct dams, etc., disclosed the legislative intent to provide for dam and reservoir sites on public school land.

To similar effect is *Moon* v. *Alred* (Tex. Civ. App.), 277 S. W. 787. See, also, *Terrell* v. *Sparks,* 104 Tex. 191 (135 S. W. 519).

We have seen that drainage and sewer laws are closely akin: *Mound City Land & Stock Co.* v. *Miller, supra.*

In the case of *In re Scappoose Drainage Dist.,* 115 Or. 541 (237 Pac. 684, 1117, 1118, 239 Pac. 193), we cited authorities much in point here. Among other

authorities upon which we relied in reaching our decision in that case is the case of *In re Drainage Dist., Buschling* v. *Ackley,* 270 Mo. 157, 170 (192 S. W. 727, 731), from which we quoted the following:

"A drainage system is designed primarily to drain or draw water from swampy and overflowed lands, and secondarily to prevent water from accumulating thereon by the overflow from streams, backwater, etc."

13. We also quoted with approval from the case of *Holt* v. *State* (Tex. Civ. App.), 176 S. W. 743, 746. It was there contended that the major portion of the approximated cost was for the construction of embankments and levees, and that drainage did not contemplate the exclusion of overflow waters. The court, in its discussion, defined drainage as follows:

"Drainage in its larger sense includes, not only providing outlets and channels for relieving land from water which accumulates thereon, but also such ditches, drains, and embankments as may be necessary to prevent the accumulation of the water, and any system of drainage will involve, to some extent at least, the creation of embankments or levees. We do not think that the fact that the larger portion of the cost of the proposed undertaking was the construction of embankments or levees prevented or rendered void the creation of the drainage district under. the statute authorizing the creation of such districts."

So, in the case at bar, the fact that the greater portion of the expense will be the construction of the wall and the pumping plant in order that the sewerage system may effectuate its purpose does not invalidate the ordinance assailed.

14. The authority being expressly given to a municipality to construct a sewer within its borders, the power to secure an outlet for it beyond its boundaries

follows necessarily by implication. This is the holding of the court in *Maywood Company* v. *Village of Maywood,* 140 Ill. 216 (29 N. E. 704). The case of *Drexel* v. *Town of Lake,* 127 Ill. 54 (20 N. E. 38), is also directly in point. In that case it was contended that a pumping plant is not a part of a sewerage system. The court, after defining the word "sewer" and stating that sewage is generally carried through the sewers by force of gravitation, pointed out that, for the reason that the sewerage system involved was in a level country, such a system would be of no avail unless some other power or agency was brought into operation. Now note the pertinent observation:

"Such new agency then becomes, from the necessity of the case, an integral part of the sewerage system, and the structures and machinery by which that agency is operated and brought into play may properly be regarded as an essential part of the sewer."

The court invoked the general rule of statutory construction to the effect that the grant of an express power to a municipality carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted.

15. The authority conferred upon the City of Portland to construct a sewerage system for the purpose of protecting the public health carries with it the essential power to build a system that will effectuate the purpose contemplated. In support of its action the City has adduced much evidence from civil engineers and others to the effect that, in order for the sewer to carry the sewage from the district described in the ordinance, it is necessary that the flood waters of the Willamette River be excluded therefrom; further, that the pumping plant is an essential, as is also the fill.

16. It plainly appears from the record that the City of Portland is face to face with the problem of draining the sewage from a locality affected by backwater, seeping waters, and flood waters at each recurring freshet. The City is confronted with the indisputable fact that it is impossible effectually to sewer the property embraced within the ordinance without excluding the waters therefrom. The municipality derives its power from its charter, which is its organic law. The improvement ordinance is attacked as being beyond the scope of the City charter.

We believe that this case reduces itself to an application of Marshall's canon of constitutional construction found in *M'Culloch* v. *Maryland,* 4 Wheat. 316, 421 (4 L. Ed. 421, 579):

"Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional."

The improvement ordinance in the case at bar is within the scope of the charter of the City of Portland.

The decree appealed from is affirmed.

Affirmed.   Rehearing Denied.